# EXHIBIT A

**12-Person Jury**

FILED
1/24/2022 4:27 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
16417487

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

THE DRISCOLL FIRM, P.C., and )
THE DRISCOLL FIRM, LLC, )
)
    Plaintiffs, )
)         **2022L000757**
v. )
)     Case No. 22L_____
FEDERAL CITY LAW GROUP, )
PLLC, BERT "TERRY" DUNKEN, )    **JURY TRIAL DEMANDED**
GREG GRIFFIN, and ACAP, LLC, )
)    Hearing Date: 5/31/2022 9:00 AM
    Defendants. )

FILED DATE: 1/24/2022 4:27 PM 2022L000757

## COMPLAINT

Plaintiffs The Driscoll Firm, P.C. and The Driscoll Firm, LLC (collectively, "Plaintiffs"),

for their Complaint against Defendants, Federal City Law Group, PLLC, Bert "Terry" Dunken,

Greg Griffin, and ACAP, LLC, (collectively, "Defendants"), state as follows:

### PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff The Driscoll Firm, P.C. is a law firm and a professional corporation

organized under the laws of the State of Illinois with a principal place of business in the State of

Missouri. Its principal, John J. Driscoll, is admitted to practice law in Illinois, Missouri, Minnesota,

and Puerto Rico.

2.     Plaintiff The Driscoll Firm, LLC is a law firm and a limited liability company

organized under the laws of the Commonwealth of Puerto Rico with a principal place of business

in Puerto Rico. Its sole member is a resident and citizen of Puerto Rico.

3.     Defendant Federal City Law Group, PLLC ("FCLG") is a law firm and professional

limited liability company organized under the laws of Arizona. According to documents obtained

1

FILED DATE: 1/24/2022 4:27 PM   2022L000757

from the Arizona Secretary of State, FCLG's current sole member is William Barfield. Barfield is a lawyer and a resident and citizen of Texas.

4.      Defendant Bert "Terry" Dunken ("Dunken") is a lawyer and a resident and citizen of Texas. According to documents obtained from the Arizona Secretary of State, Dunken was a member of FCLG when it was organized in November of 2020 and remained a member at the time the parties executed the Attorney Association Agreement ("Agreement") at issue in early 2021. FCLG's website states that Dunken is its Managing Partner and Barfield is a Partner. Dunken is also the sole member of another law firm, Dunken Law Group, PLLC, and a member and Managing Partner of an additional law firm, The Dunken Law Firm, PLLC.

5.      Defendant Greg Griffin ("Griffin") is a resident and citizen of California. Griffin signed the Agreement at issue as "Managing Member" for FCLG. Griffin is also Chief of Business Development at The Dunken Law Firm, PLLC.

6.      Recent investigation has revealed that, unbeknownst to Plaintiffs at the time they began the business dealings at issue, Dunken and Griffin are associated with a myriad of business entities and have been repeatedly accused of fraud and other (at best) questionable business practices. For example:

    a.      Dunken and his law firms are named as defendants in a lawsuit filed in Contra Costa County, California, by an individual who alleges he paid $650,000.00 to invest in lawsuits filed by certain mass tort claimants represented by Dunken but has received nothing in return because, *inter alia*, "Defendants have obtained millions of dollars from multiple collateralized loans, such as the Note Purchase Agreements entered into with Plaintiff, and have used these funds for their personal use and not for the funding of the litigation as represented, nor have the funds been used to improve the likelihood of

FILED DATE: 1/24/2022 4:27 PM  2022L000757

the cases being settled and/or successfully litigated to judgment." The plaintiff's allegations include fraud, breach of contract, and violations of the California Business and Professions Code. See Compl. in Bolla v. Presidium Partners, et al., No. MSC19-01122 (Cal. Super. Ct. Jun. 5, 2019).

b.       Dunken, his law firms, and Griffin were sued in Harris County, Texas by another law firm which alleges that it agreed to assist them with establishing a mass tort litigation department but, in the process, the defendants obtained contact information for 56 of the plaintiff firm's clients and wrote to improperly solicit those clients, falsely suggesting in the letters that the other firm would no longer be handling their claims but Dunken's firm was in a position to do so. See Petition in Vaughn Law Group, P.C. v. Dunken Law Group, PLLC, et al., No. 2017-07921 (Tex. Dist. Ct. Feb. 3, 2017).

c.       Dunken was sued by a life insurance company which alleged that Dunken, then an insurance agent, fraudulently procured a $10 million "STOLI" (Stranger Owed Life Insurance) policy in violation of policy terms and with the intent to sell the policy to the highest bidding investor on a secondary market. According to the complaint, "STOLI policies are a ghoulish form of actuarial wagering that typically exploit senior citizens between ages 70 to 85. Defendants and the investor were gambling that [the insured] would die while the Policy premiums were still a mere fraction of the death benefit." See Compl. in Ohio Nat'l Life Assur. Corp. v. Dunken, et al., No. 4:11-CV-01772 (S.D. Tex., May 9, 2011).

d.       In connection with his bankruptcy proceedings, multiple former clients of Griffin and his former company, First Blackhawk Financial Corporation ("First Blackhawk"), opposed Griffin's discharge in pleadings alleging, among other things, that

3

FILED DATE: 1/24/2022 4:27 PM   2022L000757

Griffin had misappropriated funds, committed fraud, and otherwise breached his fiduciary duties. The former clients alleged they were owed millions of dollars. One former client, a schoolteacher, alleged that Griffin agreed to invest funds for her retirement but instead used the funds to create and operate First Blackhawk. See, e.g., Compl. in In re: Griffin, No. 08-42426 (Bankr. N.D. Cal., May 14, 2009); Compl. in In re: Griffin, No. 08-42426 (Bankr. N.D. Cal., Aug. 15, 2008).

      e.     In connection with his bankruptcy proceedings, the United States Trustee objected to Griffin's discharge alleging, among other things, that Griffin had either concealed, destroyed, or failed to preserve hundreds of boxes of financial records related to transactions totaling in the tens of millions of dollars and fraudulently and intentionally failed to disclose his interest in multiple business entities, real estate holdings, stocks, and financial accounts. See Compl. in In re: Griffin, No. 08-42426 (Bankr. N.D. Cal., Oct. 14, 2009).

      f.     In adversary proceedings filed against First Blackhawk, Griffin and others in connection with bankruptcy proceedings involving Sargent Ranch, LLC, a company for whom First Blackhawk apparently acted as a mortgage broker, the company alleged that First Blackhawk and Griffin defrauded it out of tens of millions of dollars by selling syndicated loans secured by the company's real estate holdings to more than 100 lenders in violation of real estate and securities laws and in "brazen disregard" of a Desist and Refrain Order issued by the California Department of Real Estate. According to the complaint, First Blackhawk and Griffin misappropriated untold millions from the loan proceeds by, among other things, recording false deeds of trust then destroying books and

FILED DATE: 1/24/2022 4:27 PM    2022L000757

records related to the loans.  See Compl. in In re: Sargent Ranch, LLC, No. 10-04400 (Bankr. N.D. Cal., Sept. 27, 2010).

g.      The Sargent Ranch real estate development project has been described in local news accounts as "one of the most abusive land scams in recent California history." See https://morganhilltimes.com/king-of-the-ranch/ (visited Aug. 27, 2021).

h.      According to court records, numerous other lawsuits alleging fraud, conversion, breach of contract, breach of fiduciary duties and similar claims have been filed against Griffin and/or his former company, First Blackhawk, in Contra Costa County, California alone.  See, e.g., Lindsay v. Griffin, No. MSC21-00641 (Cal. Super. Ct., Apr. 6, 2021); Sylvester v. Pierce, et al., No. MSC10-02559 (Cal. Super. Ct., Aug. 18, 2010); Stone Valley Oaks Homeowners Ass'n v. Griffin, No. MSL10-04037 (Cal. Super. Ct., Apr. 14. 2010); Mirassou v. Palmer, et al., No. MSC10-00168, (Cal. Super. Ct., Jan. 15, 2010); GE Capital v. First Blackhawk Fin. Corp., No. MSL08-08215 (Cal. Super. Ct., Sept. 12, 2008); Sylvester v. First Blackhawk Fin. Corp., et al., No. MSC08-01136 (Cal. Super. Ct., Apr. 29, 2008); Heritage Bank of Com. v. First Blackhawk Fin. Corp., et al., No. MSC08-00526 (Cal. Super. Ct., Mar. 5, 2008); Johnson v. First Blackhawk Fin. Corp., et al., No. MSL08-00743 (Cal. Super. Ct., Jan. 30, 2008); Johnson v. Griffin, et al., No. MSC06-01752 (Cal. Super. Ct., Sept. 7, 2006); Gram Properties, LLC v. First Blackhawk Fin. Corp., No. MSC05-00211 (Cal. Super. Ct., Feb, 16, 2005); Calou, et al. v. First Blackhawk Fin. Corp., et al., No. MSC99-04216 (Cal. Super. Ct., Nov. 1, 1999).

7.      Defendant ACAP, LLC ("ACAP") is a limited liability company organized under the laws of Texas.  Its members include Dunken and Griffin and are all citizens of Texas and

FILED DATE: 1/24/2022 4:27 PM    2022L000757

California.  According to its website, Griffin is its Chief Executive Officer and Dunken is its General Counsel.

8.      In its marketing materials, ACAP describes itself as "formed by a team of attorneys with over a century of combined experience representing in civil litigation" and "uniquely positioned to provide insight on what makes for a compensable case."  It further holds itself out as "the only case acquisition program to deliver fully reviewed compensable cases with your choice of specific attributes, based on criteria established by leadership in litigations.  By making fully reviewed compensable cases available to attorneys, ACAP eliminates the risk, time, money, and resources typically required to find new cases, from marketing and call screening to research, medical record retrieval, and nurse reviews."  ACAP also holds itself out as able to "Eliminate the Risk of Ethics Violations and Non-Compliance."

9.      Since the time the parties began their business dealings at issue here, Griffin has acted as an agent and servant of ACAP, communicated with Plaintiffs, their lawyers, and Dunken as an agent and servant of ACAP, and used an ACAP email address and email signature block identifying him as the CEO of ACAP.

10.      The relevant Agreement at issue in this matter was formed in the State of Illinois on January 4, 2021, when Plaintiffs' sole member became the final signatory to the Agreement, a copy of which is attached as Exhibit 1.

11.      Relevant here, the Agreement contains a forum selection and choice of law provision wherein the Defendants explicitly agreed that "[t]he laws of the State of Illinois and any applicable federal law govern the Agreement . . . [and] [a]ny and all lawsuits that may be filed that concern any aspect of this agreement are to be filed in Cook County, Illinois or the United States District Court for the Northern District of Illinois." *See* Ex. 1, ¶16.

12.     Additionally, after the Agreement was executed, the Defendants purposefully and systematically communicated with residents within the State of Illinois in their efforts to attempt at retaining these persons as clients as contemplated by the Parties' Agreement.

13.     This Court has personal jurisdiction over the Defendants pursuant to Illinois' long-arm statute, 735 ILCS 5/2-209, because, at all relevant times, Defendants, acting through their agents or apparent agents:

      a.     transacted business within the State of Illinois, 735 ILCS 5/2-209(a)(1);

      b.     committed a tortious act within the State of Illinois, 735 ILCS 5/2-209(a)(2);

      c.     made or performed a contract or promise substantially connected within the State of Illinois, 735 ILCS 5/2-209(a)(7);

      d.     did business in and within the State of Illinois, 735 ILCS 5/2-209(b)(4); and as such,

      e.     this Court's exercise of jurisdiction over Defendants is permitted by the Illinois Constitution and the Constitution of the United States.

14.     Moreover, this Court has personal jurisdiction over Defendants under 735 ILCS 5/2-209(c), which provides that "[a] court may also exercise jurisdiction on any basis or hereafter as permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c) (West 2021).

15.     To that end, and consistent with the Due Process Clauses of the Fifth and Fourteenth Amendments, this Court has *in personam* jurisdiction over the Defendants because the Defendants, acting through their agents or apparent agents, purposefully availed themselves of the privilege of conducting business in Illinois and thereby invoked the benefits and protections of this state's laws.

7

FILED DATE: 1/24/2022 4:27 PM 2022L000757

FILED DATE: 1/24/2022 4:27 PM  2022L000757

Thus, requiring Defendants' appearance in this forum was reasonably foreseeable under the circumstances and does not offend traditional notions of fair play and substantial justice.

16.     Among other actions supporting Defendants' minimum contacts with the State of Illinois, Defendants: (1) entered into the relevant Agreement with Plaintiffs that was formed in the State of Illinois; (2) contractually consented to this Court's personal jurisdiction in the Agreement at issue in this matter; (3) and attempted to perform aspects of the Agreement within Illinois by purposefully and systematically communicating with Illinois residents for purposes of retaining them as clients.

17.     Finally, as referenced above, this Court has personal jurisdiction over Defendants and venue is appropriate here because the Agreement at issue contains a governing law and forum selection clause whereby Defendants expressly consented to personal jurisdiction and venue. *See* Ex. 1, ¶16.

## FACTUAL BACKGROUND

18.     Plaintiffs and their attorneys have decades of experience litigating mass tort product liability actions including, most recently, actions brought by plaintiffs who allege they or their decedents developed ovarian cancer caused by exposure to talcum powder. Plaintiffs and their co-counsel tried such a case before a jury in St. Clair County, Illinois, during approximately three weeks in July 2021 and plan to focus a significant portion of their practice on such cases for the next several years.

19.     Significant resources and expertise are required to identify and contract with viable mass tort claimants, particularly those who may be otherwise unaware of their rights or who may lack the resources necessary to obtain the pathology and electron microscopy studies, expert witness opinions, and other evidence needed to prepare such a complex case for trial.

FILED DATE: 1/24/2022 4:27 PM    2022L000757

20.     As such, lawyers often enter into attorney association agreements whereby one firm lends its efforts and expertise to identifying and locating viable claimants, and the firms agree to jointly represent such claimants, assume joint financial responsibility for the representation, and divide any contingency fee ultimately earned in each case in a manner agreed upon in writing by the lawyers and their clients.  Most states, including Illinois, have a rule of professional responsibility governing these arrangements.

21.     Based on the representations of Defendants and their agents and members that FCLG and ACAP have the expertise and ability to identify, locate, and contract with individuals with viable talcum powder product liability claims, in January of 2021, the parties entered into a joint venture whereby FCLG would perform this function with the assistance of ACAP, and FCLG and The Driscoll Firm, LLC entered into a written Agreement, a copy of which is attached as Exhibit 1.  Dunken and Griffin negotiated and agreed to the Agreement's terms on behalf of Defendants and Griffin signed the Agreement as "Managing Member."

22.     Upon information and belief, all Defendants herein, at all times herein mentioned, were acting as agents, employees, representatives, partners or joint venturers with the remaining Defendants and were acting within the course and scope of that relationship; each of the Defendants herein ratified, authorized and/or gave consent to the acts alleged herein of the remaining Defendants; and all Defendants are responsible in some manner for the occurrences herein alleged and have proximately caused Plaintiffs' damages.

23.     The Agreement provided, among other things, that:

    a.      FCLG would source 200 qualifying talcum powder cases on behalf of The Driscoll Firm, LLC ("TDF");

9

FILED DATE: 1/24/2022 4:27 PM   2022L000757

b.     All 200 cases would be required to meet specific criteria as documented by medical and pathological records obtained by FCLG and provided to TDF no later than March 1, 2021;

c.     TDF would pay FCLG a sourcing fee in the amount of $600,000.00 upon the execution of the Agreement;

d.     TDF would receive a rebate of $3,000.00 for each case not sourced as provided in the Agreement, plus certain additional reimbursements where applicable; and

e.     The firms would divide responsibilities, fees, and costs as provided in the Agreement.

24.     The form Attorney-Client Fee Agreement offered to prospective clients under the Agreement advised the prospective clients in writing of the division of fees between the law firms and in all respects complied with applicable ethics and professional responsibility rules.

25.     Plaintiffs have in have in all respects satisfied their obligations under the Agreement. Defendants have in all respects breached the Agreement by, among other things, failing to source 200 qualifying talcum powder cases, failing to provide medical and pathological records documenting that the sourced cases meet the Agreement's criteria, and failing to issue rebates or return the full $600,000.00 sourcing fee.

26.     On August 30, 2021, the parties further agreed that, in light of Defendants' breach of the Agreement, Defendants would pay a total of $650,000.00 in three specified payments to be paid by Defendants to Plaintiffs on dates certain and within 84 days. Defendants made the first payment in the amount of $250,000.00 on or about September 3, 2021 and made the second payment in the amount of $200,000.00 on or about October 15, 2021 but failed to make the final payment in the amount of $200,000.00 as agreed.

FILED DATE: 1/24/2022 4:27 PM 2022L000757

27.     On or about December 3, 2021, the parties further agreed that, in light of Defendants' breach of the Agreement, Defendants would pay an additional $100,000.00 on or before December 10, 2021 and pay an additional $125,000.00 on or before January 24, 2022. Defendants made the first payment in the amount of $100,000.00 on or about December 10, 2021 but failed to make the final payment in the amount of $125,000.00 as agreed.

## COUNT I – BREACH OF CONTRACT
### Defendant Federal City Law Group, PLLC

28.     Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

29.     The Agreement constitutes a valid and enforceable contract.

30.     Defendants breached the contract as described above.

31.     Plaintiffs in all respects satisfied their obligations under the contract.

32.     As a result of Defendants' above-described breaches of contract, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their sourcing fee, the time value of their investment, and earned legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendants' breach.

33.     Demand has been made upon Defendants for repayment, but Defendants have failed and refused to repay the amount due Plaintiffs.

## COUNT II – BREACH OF FIDUCIARY DUTIES
### Defendant Federal City Law Group, PLLC

34.     Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

35.     By virtue of their joint venture to undertake representation of clients with viable talcum powder claims and to profit therefrom, Defendants owed fiduciary duties to Plaintiffs to

act in good faith, to satisfy their obligations under the Agreement, to disclose any and all relevant information, to follow up on and ensure that 200 cases meeting specific criteria as documented by medical and pathological records obtained by FCLG and provided to Plaintiffs would be soured no later than March 1, 2021, to rebate $3,000.00 to Plaintiffs for each case not sourced as provided in the Agreement, plus certain additional reimbursements where applicable, and to ensure that Plaintiffs were being given all of the information to which they were entitled and that all information about the joint venture was complete and accurate.

36.     Defendants breached their fiduciary duties to Plaintiffs as described above.

37.     As a result of Defendants' above-described breaches of fiduciary duties, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their sourcing fee, the time value of their investment, and earned legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendants' breach.

## COUNT III – CONVERSION
## Defendant Federal City Law Group, PLLC

38.     Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

39.     Defendants improperly interfered with Plaintiffs' right to possess their own monies, and thus committed the act of conversion, when they withheld and/or absconded thousands of dollars belonging to Plaintiffs.

40.     Pursuant to the Agreement, Plaintiffs have the right to immediate possession of the funds, absolutely and unconditionally.

41.     Demand has been made upon Defendants for repayment, but Defendants have failed and refused to repay the amount due Plaintiffs.

FILED DATE: 1/24/2022 4:27 PM   2022L000757

FILED DATE: 1/24/2022 4:27 PM   2022L000757

## COUNT IV – QUANTUM MERUIT
### Defendant Federal City Law Group, PLLC

42.     Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

43.     Plaintiff paid Defendants $600,000.00 in exchange for Defendants' promise to source 200 cases meeting specific criteria as documented by medical and pathological records obtained by FCLG and provided to Plaintiffs no later than March 1, 2021.

44.     Defendants received a valuable benefit from Plaintiffs, including payment of the full sourcing fee.

45.     Defendants' retention of that benefit is unjust under the circumstances.

46.     Plaintiffs are entitled to a remedy in quantum meruit for the full value of the benefit conferred.

## COUNT V – FRAUD
### Defendant Federal City Law Group, PLLC

47.     Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

48.     Defendants falsely stated that they have the expertise and ability to identify, locate, and contract with individuals with viable talcum powder product liability claims and would, in fact, source 200 cases meeting specific criteria as documented by medical and pathological records obtained by FCLG and provided to Plaintiffs no later than March 1, 2021 or, failing that, would rebate $3,000.00 to Plaintiffs for each case not sourced as provided in the Agreement, plus certain additional reimbursements where applicable.

49.     Defendants made these statements knowing they were false and with the intent to induce Plaintiffs to pay them $600,000.00.

FILED DATE: 1/24/2022 4:27 PM   2022L000757

50.     Plaintiffs reasonably relied upon the truth of Defendants' statements.

51.     As a result, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their sourcing fee, the time value of their investment, and earned legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendants' fraud.

52.     These acts were malicious, fraudulent and oppressive, justifying an award of punitive damages so that Defendants will not engage in such conduct in the future.

## COUNT VI – NEGLIGENT MISREPRESENTATION
### Defendant Federal City Law Group, PLLC

53.     Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

54.     Defendants falsely stated that they have the expertise and ability to identify, locate, and contract with individuals with viable talcum powder product liability claims and would, in fact, source 200 cases meeting specific criteria as documented by medical and pathological records obtained by FCLG and provided to Plaintiffs no later than March 1, 2021 or, failing that, would rebate $3,000.00 to Plaintiffs for each case not sourced as provided in the Agreement, plus certain additional reimbursements where applicable.

55.     Defendants made these statements negligently without exercising ordinary care to ascertain their truth and with the intent to induce Plaintiffs to pay them $600,000.00.

56.     Plaintiffs reasonably relied upon the truth of Defendants' statements.

57.     As a result, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their sourcing fee, the time value of their investment, and earned legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendants' fraud.

## COUNT VII – TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY
### Defendant Federal City Law Group, PLLC

14

FILED DATE: 1/24/2022 4:27 PM    2022L000757

58.     Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

59.     Plaintiffs reasonably expected to undertake representation of 200 clients with viable talcum powder claims and to profit therefrom.

60.     Defendants knew that Plaintiffs reasonably expected to undertake representation of 200 clients with viable talcum powder claims and to profit therefrom.

61.     Defendants intentional and wrongful interference prevented Plaintiffs from realizing their business expectancy.

62.     As a result, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their sourcing fee, the time value of their investment, and earned legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendants' interference.

## COUNT VIII – UNJUST ENRICHMENT
### Defendant Federal City Law Group, PLLC

63.     Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

64.     Defendants have unjustly retained hundreds of thousands of dollars to Plaintiffs' detriment and such retention by Defendants violates the fundamental principles of justice, equity, and good conscience.

## COUNT IX – BREACH OF CONTRACT
### Defendant Bert "Terry" Duncan

65.     Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

66.     The Agreement constitutes a valid and enforceable contract.

67.     Defendants breached the contract as described above.

68.     Plaintiffs in all respects satisfied their obligations under the contract.

69.     As a result of Defendants' above-described breaches of contract, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their sourcing fee, the time value of their investment, and earned legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendants' breach.

70.     Demand has been made upon Defendants for repayment, but Defendants have failed and refused to repay the amount due Plaintiffs.

**COUNT X – BREACH OF FIDUCIARY DUTIES**
**Defendant Bert "Terry" Duncan**

71.     Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

72.     By virtue of their joint venture to undertake representation of clients with viable talcum powder claims and to profit therefrom, Defendants owed fiduciary duties to Plaintiffs to act in good faith, to satisfy their obligations under the Agreement, to disclose any and all relevant information, to follow up on and ensure that 200 cases meeting specific criteria as documented by medical and pathological records obtained by FCLG and provided to Plaintiffs would be soured no later than March 1, 2021, to rebate $3,000.00 to Plaintiffs for each case not sourced as provided in the Agreement, plus certain additional reimbursements where applicable, and to ensure that Plaintiffs were being given all of the information to which they were entitled and that all information about the joint venture was complete and accurate.

73.     Defendants breached their fiduciary duties to Plaintiffs as described above.

74.     As a result of Defendants' above-described breaches of fiduciary duties, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their

FILED DATE: 1/24/2022 4:27 PM    2022L000757

FILED DATE: 1/24/2022 4:27 PM    2022L000757

sourcing fee, the time value of their investment, and earned legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendants' breach.

## COUNT XI – CONVERSION
### Defendant Bert "Terry" Duncan

75.  Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

76.  Defendants improperly interfered with Plaintiffs' right to possess their own monies, and thus committed the act of conversion, when they withheld and/or absconded thousands of dollars belonging to Plaintiffs.

77.  Pursuant to the Agreement, Plaintiffs have the right to immediate possession of the funds, absolutely and unconditionally.

78.  Demand has been made upon Defendants for repayment, but Defendants have failed and refused to repay the amount due Plaintiffs.

## COUNT XII – QUANTUM MERUIT
### Defendant Bert "Terry" Duncan

79.  Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

80.  Plaintiff paid Defendants $600,000.00 in exchange for Defendants' promise to source 200 cases meeting specific criteria as documented by medical and pathological records obtained by FCLG and provided to Plaintiffs no later than March 1, 2021.

81.  Defendants received a valuable benefit from Plaintiffs, including payment of the full sourcing fee.

82.  Defendants' retention of that benefit is unjust under the circumstances.

FILED DATE: 1/24/2022 4:27 PM   2022L000757

83.     Plaintiffs are entitled to a remedy in quantum meruit for the full value of the benefit conferred.

## COUNT XIII – FRAUD
### Defendant Bert "Terry" Duncan

84.     Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

85.     Defendants falsely stated that they have the expertise and ability to identify, locate, and contract with individuals with viable talcum powder product liability claims and would, in fact, source 200 cases meeting specific criteria as documented by medical and pathological records obtained by FCLG and provided to Plaintiffs no later than March 1, 2021 or, failing that, would rebate $3,000.00 to Plaintiffs for each case not sourced as provided in the Agreement, plus certain additional reimbursements where applicable.

86.     Defendants made these statements knowing they were false and with the intent to induce Plaintiffs to pay them $600,000.00.

87.     Plaintiffs reasonably relied upon the truth of Defendants' statements.

88.     As a result, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their sourcing fee, the time value of their investment, and earned legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendants' fraud.

89.     These acts were malicious, fraudulent and oppressive, justifying an award of punitive damages so that Defendants will not engage in such conduct in the future.

## COUNT XIV – NEGLIGENT MISREPRESENTATION
### Defendant Bert "Terry" Duncan

90.     Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

FILED DATE: 1/24/2022 4:27 PM  2022L000757

91.     Defendants falsely stated that they have the expertise and ability to identify, locate, and contract with individuals with viable talcum powder product liability claims and would, in fact, source 200 cases meeting specific criteria as documented by medical and pathological records obtained by FCLG and provided to Plaintiffs no later than March 1, 2021 or, failing that, would rebate $3,000.00 to Plaintiffs for each case not sourced as provided in the Agreement, plus certain additional reimbursements where applicable.

92.     Defendants made these statements negligently without exercising ordinary care to ascertain their truth and with the intent to induce Plaintiffs to pay them $600,000.00.

93.     Plaintiffs reasonably relied upon the truth of Defendants' statements.

94.     As a result, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their sourcing fee, the time value of their investment, and earned legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendants' fraud.

## COUNT XV – TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY
### Defendant Bert "Terry" Duncan

95.     Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

96.     Plaintiffs reasonably expected to undertake representation of 200 clients with viable talcum powder claims and to profit therefrom.

97.     Defendants knew that Plaintiffs reasonably expected to undertake representation of 200 clients with viable talcum powder claims and to profit therefrom.

98.     Defendants intentional and wrongful interference prevented Plaintiffs from realizing their business expectancy.

99.     As a result, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their sourcing fee, the time value of their investment, and earned

FILED DATE: 1/24/2022 4:27 PM   2022L000757

legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendants' interference.

## COUNT XVI – UNJUST ENRICHMENT
### Defendant Bert "Terry" Duncan

100.    Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

101.    Defendants have unjustly retained hundreds of thousands of dollars to Plaintiffs' detriment and such retention by Defendants violates the fundamental principles of justice, equity, and good conscience.

## COUNT XVII - BREACH OF CONTRACT
### Defendant Greg Griffin

102.    Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

103.    The Agreement constitutes a valid and enforceable contract.

104.    Defendants breached the contract as described above.

105.    Plaintiffs in all respects satisfied their obligations under the contract.

106.    As a result of Defendants' above-described breaches of contract, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their sourcing fee, the time value of their investment, and earned legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendants' breach.

107.    Demand has been made upon Defendants for repayment, but Defendants have failed and refused to repay the amount due Plaintiffs.

FILED DATE: 1/24/2022 4:27 PM 2022L000757

## COUNT XVIII – BREACH OF FIDUCIARY DUTIES
### Defendant Greg Griffin

108.    Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

109.    By virtue of their joint venture to undertake representation of clients with viable talcum powder claims and to profit therefrom, Defendants owed fiduciary duties to Plaintiffs to act in good faith, to satisfy their obligations under the Agreement, to disclose any and all relevant information, to follow up on and ensure that 200 cases meeting specific criteria as documented by medical and pathological records obtained by FCLG and provided to Plaintiffs would be soured no later than March 1, 2021, to rebate $3,000.00 to Plaintiffs for each case not sourced as provided in the Agreement, plus certain additional reimbursements where applicable, and to ensure that Plaintiffs were being given all of the information to which they were entitled and that all information about the joint venture was complete and accurate.

110.    Defendants breached their fiduciary duties to Plaintiffs as described above.

111.    As a result of Defendants' above-described breaches of fiduciary duties, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their sourcing fee, the time value of their investment, and earned legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendants' breach.

## COUNT XIX – CONVERSION
### Defendant Greg Griffin

112.    Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

FILED DATE: 1/24/2022 4:27 PM    2022L000757

113.     Defendants improperly interfered with Plaintiffs' right to possess their own monies, and thus committed the act of conversion, when they withheld and/or absconded thousands of dollars belonging to Plaintiffs.

114.     Pursuant to the Agreement, Plaintiffs have the right to immediate possession of the funds, absolutely and unconditionally.

115.     Demand has been made upon Defendants for repayment, but Defendants have failed and refused to repay the amount due Plaintiffs.

**COUNT XX – QUANTUM MERUIT**
**Defendant Greg Griffin**

116.     Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

117.     Plaintiff paid Defendants $600,000.00 in exchange for Defendants' promise to source 200 cases meeting specific criteria as documented by medical and pathological records obtained by FCLG and provided to Plaintiffs no later than March 1, 2021.

118.     Defendants received a valuable benefit from Plaintiffs, including payment of the full sourcing fee.

119.     Defendants' retention of that benefit is unjust under the circumstances.

120.     Plaintiffs are entitled to a remedy in quantum meruit for the full value of the benefit conferred.

**COUNT XXI – FRAUD**
**Defendant Greg Griffin**

121.     Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

FILED DATE: 1/24/2022 4:27 PM   2022L000757

122.    Defendants falsely stated that they have the expertise and ability to identify, locate, and contract with individuals with viable talcum powder product liability claims and would, in fact, source 200 cases meeting specific criteria as documented by medical and pathological records obtained by FCLG and provided to Plaintiffs no later than March 1, 2021 or, failing that, would rebate $3,000.00 to Plaintiffs for each case not sourced as provided in the Agreement, plus certain additional reimbursements where applicable.

123.    Defendants made these statements knowing they were false and with the intent to induce Plaintiffs to pay them $600,000.00.

124.    Plaintiffs reasonably relied upon the truth of Defendants' statements.

125.    As a result, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their sourcing fee, the time value of their investment, and earned legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendants' fraud.

126.    These acts were malicious, fraudulent and oppressive, justifying an award of punitive damages so that Defendants will not engage in such conduct in the future.

## COUNT XXII – NEGLIGENT MISREPRESENTATION
### Defendant Greg Griffin

127.    Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

128.    Defendants falsely stated that they have the expertise and ability to identify, locate, and contract with individuals with viable talcum powder product liability claims and would, in fact, source 200 cases meeting specific criteria as documented by medical and pathological records obtained by FCLG and provided to Plaintiffs no later than March 1, 2021 or, failing that, would rebate $3,000.00 to Plaintiffs for each case not sourced as provided in the Agreement, plus certain additional reimbursements where applicable.

23

129.    Defendants made these statements negligently without exercising ordinary care to ascertain their truth and with the intent to induce Plaintiffs to pay them $600,000.00.

130.    Plaintiffs reasonably relied upon the truth of Defendants' statements.

131.    As a result, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their sourcing fee, the time value of their investment, and earned legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendants' fraud.

## COUNT XXIII – TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY
### Defendant Greg Griffin

132.    Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

133.    Plaintiffs reasonably expected to undertake representation of 200 clients with viable talcum powder claims and to profit therefrom.

134.    Defendants knew that Plaintiffs reasonably expected to undertake representation of 200 clients with viable talcum powder claims and to profit therefrom.

135.    Defendants intentional and wrongful interference prevented Plaintiffs from realizing their business expectancy.

136.    As a result, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their sourcing fee, the time value of their investment, and earned legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendants' interference.

## COUNT XXIV – UNJUST ENRICHMENT
### Defendant Greg Griffin

137.    Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

FILED DATE: 1/24/2022 4:27 PM   2022L000757

138.     Defendants have unjustly retained hundreds of thousands of dollars to Plaintiffs' detriment and such retention by Defendants violates the fundamental principles of justice, equity, and good conscience.

## COUNT XXV – BREACH OF CONTRACT
### Defendant ACAP, LLC

139.     Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

140.     The Agreement constitutes a valid and enforceable contract.

141.     Defendants breached the contract as described above.

142.     Plaintiffs in all respects satisfied their obligations under the contract.

143.     As a result of Defendants' above-described breaches of contract, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their sourcing fee, the time value of their investment, and earned legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendants' breach.

144.     Demand has been made upon Defendants for repayment, but Defendants have failed and refused to repay the amount due Plaintiffs.

## COUNT XXVI – BREACH OF FIDUCIARY DUTIES
### Defendant ACAP, LLC

145.     Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

146.     By virtue of their joint venture to undertake representation of clients with viable talcum powder claims and to profit therefrom, Defendants owed fiduciary duties to Plaintiffs to act in good faith, to satisfy their obligations under the Agreement, to disclose any and all relevant information, to follow up on and ensure that 200 cases meeting specific criteria as documented by

FILED DATE: 1/24/2022 4:27 PM 2022L000757

medical and pathological records obtained by FCLG and provided to Plaintiffs would be soured no later than March 1, 2021, to rebate $3,000.00 to Plaintiffs for each case not sourced as provided in the Agreement, plus certain additional reimbursements where applicable, and to ensure that Plaintiffs were being given all of the information to which they were entitled and that all information about the joint venture was complete and accurate.

147.    Defendants breached their fiduciary duties to Plaintiffs as described above.

148.    As a result of Defendants' above-described breaches of fiduciary duties, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their sourcing fee, the time value of their investment, and earned legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendants' breach.

## COUNT XXVII – CONVERSION
## Defendant ACAP, LLC

149.    Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

150.    Defendants improperly interfered with Plaintiffs' right to possess their own monies, and thus committed the act of conversion, when they withheld and/or absconded thousands of dollars belonging to Plaintiffs.

151.    Pursuant to the Agreement, Plaintiffs have the right to immediate possession of the funds, absolutely and unconditionally.

152.    Demand has been made upon Defendants for repayment, but Defendants have failed and refused to repay the amount due Plaintiffs.

FILED DATE: 1/24/2022 4:27 PM 2022L000757

## COUNT XXVIII – QUANTUM MERUIT
### Defendant ACAP, LLC

153.    Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

154.    Plaintiff paid Defendants $600,000.00 in exchange for Defendants' promise to source 200 cases meeting specific criteria as documented by medical and pathological records obtained by FCLG and provided to Plaintiffs no later than March 1, 2021.

155.    Defendants received a valuable benefit from Plaintiffs, including payment of the full sourcing fee.

156.    Defendants' retention of that benefit is unjust under the circumstances.

157.    Plaintiffs are entitled to a remedy in quantum meruit for the full value of the benefit conferred.

## COUNT XXIX – FRAUD
### Defendant ACAP, LLC

158.    Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

159.    Defendants falsely stated that they have the expertise and ability to identify, locate, and contract with individuals with viable talcum powder product liability claims and would, in fact, source 200 cases meeting specific criteria as documented by medical and pathological records obtained by FCLG and provided to Plaintiffs no later than March 1, 2021 or, failing that, would rebate $3,000.00 to Plaintiffs for each case not sourced as provided in the Agreement, plus certain additional reimbursements where applicable.

160.    Defendants made these statements knowing they were false and with the intent to induce Plaintiffs to pay them $600,000.00.

161. Plaintiffs reasonably relied upon the truth of Defendants' statements.

162. As a result, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their sourcing fee, the time value of their investment, and earned legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendants' fraud.

163. These acts were malicious, fraudulent and oppressive, justifying an award of punitive damages so that Defendants will not engage in such conduct in the future.

## COUNT XXX – NEGLIGENT MISREPRESENTATION
### Defendant ACAP, LLC

164. Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

165. Defendants falsely stated that they have the expertise and ability to identify, locate, and contract with individuals with viable talcum powder product liability claims and would, in fact, source 200 cases meeting specific criteria as documented by medical and pathological records obtained by FCLG and provided to Plaintiffs no later than March 1, 2021 or, failing that, would rebate $3,000.00 to Plaintiffs for each case not sourced as provided in the Agreement, plus certain additional reimbursements where applicable.

166. Defendants made these statements negligently without exercising ordinary care to ascertain their truth and with the intent to induce Plaintiffs to pay them $600,000.00.

167. Plaintiffs reasonably relied upon the truth of Defendants' statements.

168. As a result, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their sourcing fee, the time value of their investment, and earned legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendants' fraud.

FILED DATE: 1/24/2022 4:27 PM   2022L000757

FILED DATE: 1/24/2022 4:27 PM   2022L000757

## COUNT XXXI – TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY
### Defendant ACAP, LLC

169.    Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

170.    Plaintiffs reasonably expected to undertake representation of 200 clients with viable talcum powder claims and to profit therefrom.

171.    Defendants knew that Plaintiffs reasonably expected to undertake representation of 200 clients with viable talcum powder claims and to profit therefrom.

172.    Defendants intentional and wrongful interference prevented Plaintiffs from realizing their business expectancy.

173.    As a result, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their sourcing fee, the time value of their investment, and earned legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendants' interference.

## COUNT XXXII – UNJUST ENRICHMENT
### Defendant ACAP, LLC

174.    Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

175.    Defendants have unjustly retained hundreds of thousands of dollars to Plaintiffs' detriment and such retention by Defendants violates the fundamental principles of justice, equity, and good conscience.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, as follows:

FILED DATE: 1/24/2022 4:27 PM   2022L000757

1.      Compensatory damages in an amount to be determined at trial, but in excess of $100,000.00 as to each claim for relief;

2.      Costs and disbursement incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

3.      Interest to the extent available under applicable laws; and

4.      Such other and further damages, including punitive damages, and relief as the Court deems just and proper.

Dated:  January 24, 2022                         Respectfully Submitted,

**THE DRISCOLL FIRM, LLC, #65037**

By:     */s/ John J. Driscoll*
        John J. Driscoll, #6276464
        1311 Avenida Ponce de Leon, 6th Floor
        San Juan, PR 00907
        Phone: (314) 222-2605
        Fax: (314) 932-3233
        john@jjlegal.com

**THE DRISCOLL FIRM, P.C., #65120**
Christopher J. Quinn, #6310758
211 N. Broadway, Suite 4050
St. Louis, MO 63102
Phone: (314) 932-3232
Fax: (314) 932-3233
chris@thedriscollfirm.com

FILED DATE: 1/24/2022 4:27 PM   2022L000757

# EXHIBIT 1

FILED DATE: 1/24/2022 4:27 PM   2022L000757

# ATTORNEY ASSOCIATION AGREEMENT

This Attorney Association Agreement (this **"Agreement"**) is made on January 4, 2021, by and between The Driscoll Firm, LLC, a Limited Liability Company under the laws of the United States Territory of Puerto Rico (collectively **"TDF"**) and Federal City Law Group, PLLC, a professional limited liability company organized under the laws of the State of Arizona (**"FCLG"**).

WHEREAS, FCLG includes at least one lawyer and has expertise in sourcing clients having potential personal injury claims against medical device or consumer product manufacturers; and

WHEREAS, TDF desires to engage FCLG to source clients on its behalf on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the premises and covenants contained herein, the parties hereto agree as follows:

1.   <u>SOURCING OF CLIENTS</u>. FCLG shall source 200 Johnson & Johnson talcum powder cases (each a **"Case"** or a **"Client"**) on behalf of TDF.

2.   <u>SOURCING FEE</u>. TDF shall pay a fee of $3,000.00 for each Case meeting the criteria set out in Sections 5 and 6 herein sourced by FCLG (the **"Sourcing Fee"**). The Sourcing Fee shall be paid as provided in Section 4 and 6.

3.   <u>RETAINED INTEREST</u>. FCLG shall retain a 20% interest in each Case sourced under this Agreement, such interest to be paid within 14 days after the final settlement of each Case.

4.   <u>PAYMENT TERMS</u>. The Sourcing Fee shall be due from TDF to FCLG according to the following terms;

     a.   $600,000 (Six Hundred Thousand) The sourcing Fee, shall be due upon execution of this Agreement.

5.   <u>CASES MUST MEET ESTABLISHED CRITERIA</u>. All cases must meet the following agreed criteria at the outset, established by medical records including pathological reports. Medical and pathological records evincing any one of the following as the primary and first diagnosis qualifies:

**<u>Initial Qualification:</u>**

1.   Epithelial Ovarian Cancer;  or

2.   Serous;  or

3.   Papillary serous carcinoma;  or



1

FILED DATE: 1/24/2022 4:27 PM   2022L000757

4. Serous papillary carcinoma; or

5. High Grade Serous Carcinoma (HGSC); or

6. Endometrioid; or

7. Clear Cell; or

8. Undifferentiated; or

9. Mucinous; or

10. Borderline Tumors; or

11. Primary Peritoneal; or

12. Fallopian Tube; or

13. Mesothelioma

The foregoing qualifying diagnosis must be established by medical records that include pathological reports substantiating the diagnosis. Without pathological reports substantiating the diagnosis, a case cannot be accurately characterized as qualified. In addition to medical and pathological records establishing a qualifying diagnosis, a case qualifies at the outset/initially only if it includes the following additional criteria below:

• Victim is a woman.

• Victim was over 21 at the time of diagnosis, but not older than 70 years of age at diagnosis.

• Victim used on a **routine basis (4 or more times per week)** Johnson & Johnson's Baby Powder® and/or Shower to Shower® on her genitals for **one or more years** before diagnosis, and can produce at least one living witness to same.

• If victim had a tubal ligation, it occurred after victim began exposure to Johnson & Johnson's Baby Powder® and/or Shower to Shower®.

• If victim had a hysterectomy, it occurred after victim began exposure to Johnson & Johnson's Baby Powder® and/or Shower to Shower®.

• If victim died:

o Person pursuing lawsuit on behalf of Victim has primary standing under the laws of the state in which the decedent died, and therefore has standing to pursue lawsuit on behalf of decedent.

FILED DATE: 1/24/2022 4:27 PM   2022L000757

o Victim death is within the statute of limitations in the state of death, allowing enough time (one month) for law firm to file a lawsuit.

o Caller believes there are one or more eyewitnesses to victim's routine use of Johnson & Johnson's Baby Powder® and/or Shower to Shower® for a minimum of one or more years before diagnosis (spouse, significant other, sister, daughter, female friend, etc.)

o Victim died because of one or more of the three foregoing cancers and not because of an unrelated event, as substantiated by the decedent's death certificate.

o Neither victim nor caller ever hired a lawyer to prosecute this matter.

14.     <u>MATERIAL TERMS ESSENTIAL TO THIS AGREEMENT:</u>

Cases will be sent to The Driscoll Firm, LLC within 48 hours of being retained, so that The Driscoll Firm, LLC can promptly assess any statute of limitations issues and act accordingly. The Driscoll Firm, LLC shall acknowledge receipt of each file within 24 hours of receiving it. The Driscoll Firm, LLC does not want to incur unnecessary labor, time and resources revieing cases sent, and expects that cases meet criteria outlined in section 5. Cases sent to The Driscoll Firm, LLC will meet criteria and medical and pathological records will be sent within 45 days establishing criteria outlined in section 5. If any Case fails to meet the criteria listed in Section 5, FCLG will replace the non-qualifying Case with a case that has medical and pathological records establishing criteria. The Driscoll Firm, LLC requires that all cases subject to this agreement have medical and pathological records establishing criteria by no later than March, 1, 2021.

<u>Settlement Ultimately Determined and Agreed by Johnson & Johnson, Determination and Calculation of Rebates/Repayment/Reimbursements:</u> If FCLG does not source an aggregate of 200 qualified clients, TDF will be entitled to a rebate of $3,000.00 for each Case that is not sourced as provided in this Agreement, and an additional $400 in the event that TDF was required to file a case.

Separately, FCLG will repay TDF $3,000.00 (or $3,400.00 where a filing fee has been paid) as reimbursement for any of the 200 cases that do not meet the settlement criteria for client compensation ultimately determined and agreed by Johnson & Johnson. FCLG will repay The Driscoll Firm, LLC these monies within 30 days of The Driscoll Firm, LLC informing FCLG of the settlement criteria determined and agreed by Johnson & Johnson.

Separately, after the settlement criteria are determined and agreed by Johnson & Johnson and communicated to FCLG, if the values any of the 200 Cases sent under the terms of this agreement are:

(1) between $150,000.00 and $199,999.99, TDF will pay FCLG an additional sourcing cost of $1,500.00 within 30 days of that value being known;

(2) between $200,000.00 and $249,999.99, TDF will pay FCLG an additional sourcing cost of $3,000.00 within 30 days of that value being known;

3

FILED DATE: 1/24/2022 4:27 PM 2022L000757

(3) between $250,000.00 and $299,999.99, TDF will pay FCLG an additional sourcing cost of $4,500.00 within 30 days of that value being known;

(4) between $300,000.00 and $349,999.99, TDF will pay FCLG an additional sourcing cost of $6,000.00 within 30 days of that value being known;

(5) between $350,000.00 and $399,999.99 TDF will pay FCLG an additional sourcing cost of $7,500.00 within 30 days of that value being known;

(6) between $400,000.00 and $449,999.99, TDF will pay FCLG an additional sourcing cost of $9,000.00 within 30 days of that value being known;

(7) between $450,000.00 and $499,999.99, TDF will pay FCLG an additional sourcing cost of $10,500.00 within 30 days of that value being known; and

(8) any value meeting or exceeding $500,000.00, TDF will pay FCLG an additional sourcing cost of $12,000.00 withing 30 days of that value being known.

FCLG will receive 20% of the attorneys' fees of all cases, calculated from the amount remaining after common benefit assessment has been subtracted, TDF will receive 80% of all attorney's fees calculated from the amount remaining after common benefit assessment has been subtracted. Parties are able to recover legitimate and reasonable reimbursed costs from clients where appropriate, parties must itemize and detail all expenses sought to be reimbursed.

15. <u>CASE FILE</u>. For each case, FCLG shall provide TDF with a criteria case file to include the following documents:

    a. Client Engagement Letter/Retainer as described herein (attached hereto as **Exhibit A**)
    b. HIPAA Medical Authorization
    c. Client Intake Form (attached hereto as **Exhibit B**)
    d. All available medical records establishing criteria as defined herein.

16. <u>GOVERNING LAW AND FORUM SELECTION CLAUSE</u>. The laws of the State of Illinois and any applicable federal law govern this Agreement. The parties reject arbitration of any disputes that might arise out this agreement. Any and all lawsuits that may be filed that concern any aspect of this agreement are to be filed in Cook County, Illinois or the United States District Court for the Northern District of Illinois.

17. <u>CONFIDENTIALITY AND COMPLIANCE</u>. Both parties agree than any non-public information obtained under this Agreement is confidential and may not be disclosed without the consent of the other party, except as may be required by applicable law or at the request of a governmental agency. Both parties further agree to abide by all applicable laws pertaining to the Client, including but not limited to the Health Insurance Portability and Accountability Act of 1996. Both parties maintain joint responsibility for clients' matters, and both parties maintain malpractice insurance applicable to all clients' claims at all times throughout this engagement.

4

FILED DATE: 1/24/2022 4:27 PM   2022L000757

18.   USE OF THE DRISCOLL FIRM, LLC'S RETAINER AGREEMENT:   The parties envision retaining new clients utilizing a retainer agreement that includes The Driscoll Firm, LLC as one of the law firms providing services.  FCLG will be the party exchanging this retainer agreement with prospective clients.  FCLG will report to TDF the names and addresses of those parties that have been sent a retainer and not returned the retainer within 14 days, so that TDF can properly disengage those clients and not expose itself to retainer agreements being executed after a clients' statue of limitations has expired.  FCLG will otherwise document the transmission of retainer agreements to and from clients, and will timely provide TDF with this information upon request.

19.   AMENDMENT AND REFORMATION. No amendment to this Agreement is effective unless it is in writing and signed by each party to this Agreement. The parties further agree to amend and reform this Agreement as needed in order to ensure compliance with any applicable state ethical rules and regulations.


IN WITNESS WHEREOF, the parties hereto have executed this Agreement in duplicate counterparts, each of which shall be deemed an original, on the date and year first above written.


The Driscoll Firm, LLC

By: _____   1/4/21

Name: John Driscoll

Title: _____ Sole Member


Federal City Law Group, PLLC

By: _____   12/22/20

Name: Greg Griffin

Title: Managing Member


5