**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| THE DRISCOLL FIRM, P.C., and | ) | |
| THE DRISCOLL FIRM, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:22-cv-01536 |
| | ) | |
| v. | ) | Hon.  John Z. Lee |
| | ) | |
| FEDERAL CITY LAW GROUP, | ) | Magistrate J. Jeffrey Cummings |
| PLLC, BERT "TERRY" DUNKEN, | ) | |
| GREG GRIFFIN, and ACAP, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**FIRST AMENDED COMPLAINT**

Come the Plaintiffs, The Driscoll Firm, P.C. and The Driscoll Firm, LLC (collectively "Plaintiffs") and for their First Amended Complaint against Defendants, Federal City Law Croup, PLLC, Bert "Terry" Dunken, Greg Griffin, and ACAP, LLC, (collectively "Defendants"), state as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.      Plaintiff The Driscoll Firm, P.C. ("Driscoll P.C.") is a law firm and a professional corporation organized under the laws of the State of Illinois with a principal place of business in the State of Missouri. Its principal, John J. Driscoll, is admitted to practice law in Illinois, Missouri and Minnesota.

2.      Plaintiff The Driscoll Firm, LLC ("Driscoll LLC") is a law firm and a limited liability company organized under the laws of the Commonwealth of Puerto Rico with a principal place of business  in Puerto Rico.  Its sole member is a resident and citizen of Puerto Rico.  Driscoll LLC retains Driscoll P.C. to assist with various aspects of representation of client.  The two entities have identical ownership and management.

1

3.     Defendant Federal City Law Group, PLLC ("FCLG") is a law firm and professional limited liability company organized under the laws of Arizona.  According to documents obtained from the Arizona Secretary of State, FCLG's current sole member is William Barfield ("Barfield").  Barfield is a lawyer and a resident and citizen of Texas.

4.     Defendant Bert "Terry" Dunken ("Dunken") is a lawyer and a resident and citizen of Texas.  According to documents obtained from the Arizona Secretary of State, Dunken was a member of FCLG when it was organized in November of 2020 and remained a member at the time the parties executed the Attorney Association Agreement ("Agreement") at issue in early 2021.  FCLG's website states that Dunken is its Managing Partner of FCLG, and Barfield is a Partner.  Dunken is also the sole member of another law firm, Dunken Law Group, PLLC, and a member and Managing Partner of an additional law firm, The Dunken Law Firm, PLLC, which was not disclosed to Plaintiffs.

5.     Defendant Greg Griffin ("Griffin") is a resident and citizen of California.  Griffin signed the Agreement at issue as "Managing Member" for FCLG.  Griffin is also Chief of Business Development at The Dunken Law Firm, PLLC.

6.     Recent investigation has revealed that, unbeknownst to Plaintiffs at the time they began the business dealings at issue, Dunken and Griffin are associated with a myriad of business entities and have been repeatedly accused of fraud and other (at best) questionable business practices.  For example:

a.     Dunken and his law firms are named as defendants in a lawsuit filed in Contra Costa County, California, by an individual who alleges he paid $650,000.00 to invest in lawsuits filed by certain mass tort claimants represented by Dunken but has received nothing in return because, *inter alia,* "Defendants have obtained millions of

2

dollars from multiple collateralized loans, such as the Note Purchase Agreements entered into with Plaintiff, and have used these funds for their personal use and not for the funding of the litigation as represented, nor have the funds been used to improve the likelihood of the cases being settled and/or successfully litigated to judgment." The plaintiff's allegations include fraud, breach of contract, and violations of the California Business and Professions Code. See Compl. in Bolla v. Presidium Partners, et al., No. MSC19-01122 (Cal. Super. Ct. Jun. 5, 2019).

b.     Dunken, his law firms, and Griffin were sued in Harris County, Texas by another law firm which alleges that it agreed to assist them with establishing a mass tort litigation department but, in the process, the defendants obtained contact information for 56 of the plaintiff firm's clients and wrote to improperly solicit those clients, falsely suggesting in the letters that the other firm would no longer be handling their claims but Dunken's firm was in a position to do so. See Petition in Vaughn Law Group, P.C. v. Dunken Law Group, PLLC, et al., No. 2017-07921 (Tex. Dist. Ct. Feb. 3, 2017).

c.     Dunken was sued by a life insurance company which alleged that Dunken, then an insurance agent, fraudulently procured a $10 million "STOLI" (Stranger Owed Life Insurance) policy in violation of policy terms and with the intent to sell the policy to the highest bidding investor on a secondary market. According to the complaint, "STOLI policies are a ghoulish form of actuarial wagering that typically exploit senior citizens between ages 70 to 85. Defendants and the investor were gambling that [the insured] would die while the Policy premiums were still a mere fraction of the death benefit." See Compl. in Ohio Nat'l Life Assur. Corp. v. Dunken, et al., No. 4:11-CV-01772 (S.D. Tex., May 9, 2011).

d.      In connection with his bankruptcy proceedings, multiple former clients of Griffin and his former company, First Blackhawk Financial Corporation ("First Blackhawk"), opposed Griffin's discharge in pleadings alleging, among other things, that Griffin had misappropriated funds, committed fraud, and otherwise breached his fiduciary duties.  The former clients alleged they were owed millions of dollars.  One former client, a schoolteacher, alleged that Griffin agreed to invest funds for her retirement but instead used the funds to create and operate First Blackhawk.  See, e.g., Compl. in In re: Griffin, No. 08-42426 (Bankr. N.D. Cal., May 14, 2009); Compl. in In re: Griffin, No. 08-42426 (Bankr. N.D. Cal., Aug. 15, 2008).

e.      In connection with his bankruptcy proceedings, the United States Trustee objected to Griffin's discharge alleging, among other things, that Griffin had either concealed, destroyed, or failed to preserve hundreds of boxes of financial records related to transactions totaling in the tens of millions of dollars and fraudulently and intentionally failed to disclose his interest in multiple business entities, real estate holdings, stocks, and financial accounts.  See Compl. in In re: Griffin, No. 08-42426 (Bankr. N.D. Cal., Oct. 14, 2009).

f.      In adversary proceedings filed against First Blackhawk, Griffin and others in connection with bankruptcy proceedings involving Sargent Ranch, LLC, a company for whom First Blackhawk apparently acted as a mortgage broker, the company alleged that First Blackhawk and Griffin defrauded it out of tens of millions of dollars by selling syndicated loans secured by the company's real estate holdings to more than 100 lenders in violation of real estate and securities laws and in "brazen disregard" of a Desist and Refrain Order issued by the California Department of Real Estate. According to the

complaint, First Blackhawk and Griffin misappropriated untold millions from the loan proceeds by, among other things, recording false deeds of trust then destroying books and records related to the loans.  See Compl. in In re: Sargent Ranch, LLC, No. 10-04400 (Bankr. N.D. Cal., Sept. 27, 2010).

g. The Sargent Ranch real estate development project has been described in local news accounts as "one of the most abusive land scams in recent California history." See https://morganhilltimes.com/king-of-the-ranch/ (visited Aug. 27, 2021).

h. According to court records, numerous other lawsuits alleging fraud, conversion, breach of contract, breach of fiduciary duties and similar claims have been filed against Griffin and/or his former company, First Blackhawk, in Contra Costa County, California alone.  See, e.g., Lindsay v. Griffin, No. MSC21-00641 (Cal. Super. Ct., Apr. 6, 2021); Sylvester v. Pierce, et al., No. MSC10-02559 (Cal. Super. Ct., Aug. 18, 2010); Stone Valley Oaks Homeowners Ass'n v. Griffin, No. MSL10-04037 (Cal. Super. Ct., Apr. 14. 2010); Mirassou v. Palmer, et al., No. MSC10-00168, (Cal. Super. Ct., Jan. 15, 2010); GE Capital v. First Blackhawk Fin. Corp., No. MSL08-08215 (Cal. Super. Ct., Sept. 12, 2008); Sylvester v. First Blackhawk Fin. Corp., et al., No. MSC08-01136 (Cal. Super. Ct., Apr. 29, 2008); Heritage Bank of Com. v. First Blackhawk Fin. Corp., et al., No. MSC08-00526 (Cal. Super. Ct., Mar. 5, 2008); Johnson v. First Blackhawk Fin. Corp., et al., No. MSL08-00743 (Cal. Super. Ct., Jan. 30, 2008); Johnson v. Griffin, et al., No. MSC06-01752 (Cal. Super. Ct., Sept. 7, 2006); Gram Properties, LLC v. First Blackhawk Fin. Corp., No. MSC05-00211 (Cal. Super. Ct., Feb, 16, 2005); Calou, et al. v. First Blackhawk Fin. Corp., et al., No. MSC99-04216 (Cal. Super. Ct., Nov. 1, 1999).

7. Defendant ACAP, LLC ("ACAP") is a limited liability company organized under the laws of Texas. Its members include Dunken and Griffin who are citizens of Texas and California. According to its website, Griffin is its Chief Executive Officer and Dunken is its General Counsel. On information and belief, other current or former members of ACAP include Mike Vizvary and Steve Nober who are also principals of FCLG.

8. In its marketing materials, ACAP describes itself as "formed by a team of attorneys with over a century of combined experience representing in civil litigation" and "uniquely positioned to provide insight on what makes for a compensable case." It further holds itself out as "the only case acquisition program to deliver fully reviewed compensable cases with your choice of specific attributes, based on criteria established by leadership in litigations. By making fully reviewed compensable cases available to attorneys, ACAP eliminates the risk, time, money, and resources typically required to find new cases, from marketing and call screening to research, medical record retrieval, and nurse reviews." ACAP also holds itself out as able to "Eliminate the Risk of Ethics Violations and Non-Compliance."

9. Since the time the parties began their business dealings at issue here, Griffin has acted as an agent and servant of ACAP, communicated with Plaintiffs, their lawyers, and Dunken as an agent and servant of ACAP, and used an ACAP email address and email signature block identifying him as the CEO of ACAP. In fact, the communications in which Griffin and Dunken were held out as agents and servants of ACAP occurred before and after the contract, attached hereto as Exhibit 1 was executed, such that the material misrepresentations made to Driscoll, as alleged herein, were made to Driscoll while Griffin and Dunken were acting as the agents of FCLG and as the agents and or apparent agents of ACAP. Some of the email communications are attached as Group Exhibit 2.

10.    The relevant Agreement at issue in this matter was formed in the State of Illinois on January 4, 2021, when Plaintiffs' sole member became the final signatory to the Agreement, a copy of which is attached as Exhibit 1.

11.    The Agreement contains a forum selection and choice of law provision wherein the Defendants explicitly agreed that "[t]he laws of the State of Illinois and any applicable federal law govern the Agreement . . . [and] [a]ny and all lawsuits that may be filed that concern any aspect of this agreement are to be filed in Cook County, Illinois, or the United States District Court for the Northern District of Illinois." *See* Ex. 1, ¶16.

12.    Additionally, after the Agreement was executed, the Defendants purposefully and systematically communicated with residents within the State of Illinois in their efforts to attempt at retaining these persons as clients as contemplated by the Parties' Agreement.

13.    This Court has personal jurisdiction over the Defendants pursuant to Illinois' long-arm statute, 735 ILCS 5/2-209, because, at all relevant times, Defendants, acting through their agents or apparent agents:

    a.    transacted business within the State of Illinois, 735 ILCS 5/2-209(a)(1);

    b.    committed a tortious act within the State of Illinois, 735 ILCS 5/2-209(a)(2);

    c.    made or performed a contract or promise substantially connected within the State of Illinois, 735 ILCS 5/2-209(a)(7);

    d.    did business in and within the State of Illinois, 735 ILCS 5/2-209(b)(4); and as such,

    e.    this Court's exercise of jurisdiction over Defendants is permitted by the Illinois Constitution and the Constitution of the United States.

7

14.     Moreover, this Court has personal jurisdiction over Defendants under 735 ILCS 5/2-209(c), which provides that "[a] court may also exercise jurisdiction on any basis or hereafter as permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c) (West 2021).

15.     To that end, and consistent with the Due Process Clauses of the Fifth and Fourteenth Amendments, this Court has *in personam* jurisdiction over the Defendants because the Defendants, acting through their agents or apparent agents, purposefully availed themselves of the privilege of conducting business in Illinois and thereby invoked the benefits and protections of this state's laws. Thus, requiring Defendants' appearance in this forum was reasonably foreseeable under the circumstances and does not offend traditional notions of fair play and substantial justice.

16.     Among other actions supporting Defendants' minimum contacts with the State of Illinois, Defendants: (1) entered into the relevant Agreement with Plaintiffs that was formed in the State of Illinois; (2) contractually consented to this Court's personal jurisdiction in the Agreement at issue in this matter; (3) and attempted to perform aspects of the Agreement within Illinois by purposefully and systematically communicating with Illinois residents for purposes of retaining them as clients.

17.     Finally, as referenced above, this Court has personal jurisdiction over Defendants and venue is appropriate here because the Agreement at issue contains a governing law and forum selection clause whereby Defendants expressly consented to personal jurisdiction and venue. *See* Ex. 1, ¶16.

## FACTUAL BACKGROUND

18.     Plaintiffs and their attorneys have decades of experience litigating mass tort product liability actions including, most recently, actions brought by plaintiffs who allege they or their

decedents developed ovarian cancer caused by exposure to talcum powder. Plaintiffs and their co-counsel tried such a case before a jury in St. Clair County, Illinois, during approximately three weeks in July 2021 and plan to focus a significant portion of their practice on such cases for the next several years.

19.     Significant resources and expertise are required to identify and contract with viable mass tort claimants, particularly those who may be otherwise unaware of their rights or who may lack the resources necessary to obtain the pathology and electron microscopy studies, expert witness opinions, and other evidence needed to prepare such a complex case for trial.

20.     As such, lawyers often enter into attorney association agreements whereby one firm lends its efforts and expertise to identifying and locating viable claimants, and the firms agree to jointly represent such claimants, assume joint financial responsibility for the representation, and share in the profits from such comes by dividing any contingency fee ultimately earned in each case in a manner agreed upon in writing by the lawyers and their clients.

21.     The Agreement attached hereto was negotiated between John Driscoll of Plaintiffs and Griffin and Dunken of FCLG and ACAP during 2019. Dunken and John Driscoll initially met in person at the Missouri Athletic Club near St. Louis, Missouri. Driscoll learned of Defendants from Jim Onder, a well-respected attorney who handles complex matters involving defective products. Dunken said he and Griffin, FCLG and ACAP worked extensively with attorney Onder.

22.     During the meeting, Driscoll told Dunken that he believed that Johnson & Johnson had serious liability and risk problems because of the talcum powder it had manufactured and sold to consumers and that Driscoll intended to strongly pursue these cases. Dunken then told Driscoll that "we have the resources and expertise to provide hundreds of clients" who have strong, valuable cases. At the conclusion of the meeting, Driscoll and Dunken agreed to talk further about an

agreement regarding sourcing clients for talcum powder cases. Driscoll understood the use of the term "we" by Dunken to mean Dunken, Driscoll, FCLG and ACAP.

23.     Following the meeting, there were further discussions about the terms of contract involving the sourcing of clients and joint representation of clients who had sustained serious injury based on use of Johnson & Johnson talcum powder.

24.     During November and December 2019, John Driscoll had further negotiations with Defendants Griffin and Dunken about the terms of an agreement. Some emails were exchanged between the parties but most of the substantive discussions were by telephone. During these discussions, Griffin and Dunken told Driscoll that if he would pay $600,000.00, they would provide 200 talcum powder clients who fit the criteria articulated by Driscoll, including the gender, age, frequency of use of talcum powder and sustained certain kinds of injuries (had been diagnosed with certain kinds of cancer).

25.     Specifically, in order to obtain Driscoll's agreement to pay $600,000.00 immediately upon execution of an agreement, Griffin and Dunken assured Driscoll that: 1) they had a tested methodology for screening suitable clients which would fit precisely the criteria stated by Driscoll; 2) that they already screened potential clients and had more than 30 clients whose medical records were obtained or ordered which were immediately available to be signed up and their claims prosecuted; 3) based on their experience and tested methodology created by Defendants, that they would provide 200 cases/clients meeting all of the criteria stated by Driscoll to Driscoll/Driscoll law firms along with complete medical records within 45 days of execution of a written agreement and payment of $600,000, and 4) that the payment of $600,000.00 would be used exclusively for screening, obtaining and advertising and for obtaining medical records for clients of the Driscoll Plaintiffs and for no other purpose.

26.     Based upon and in reliance on the representations made by Defendants Griffin and Dunken and their background information as stated by Defendants Griffin and Dunken, including that they were principals of ACAP and that ACAP would be participating in the business arrangement, Plaintiffs entered into the agreement which is attached hereto as Exhibit 1.

27.     The Agreement provided, among other things, that:

a.      FCLG would source 200 qualifying talcum powder cases on behalf of The Driscoll Firm, LLC ("TDF");

b.      All 200 cases would be required to meet specific criteria as documented by medical and pathological records obtained by FCLG and provided to TDF no later than March 1, 2021;

c.      TDF would pay FCLG a sourcing fee in the amount of $600,000.00 upon the execution of the Agreement;

d.      TDF would receive a rebate of $3,000.00 for each case not sourced as provided in the Agreement, plus certain additional reimbursements where applicable; and

e.      The firms would divide responsibilities, fees, and costs as provided in the Agreement.

28.     Plaintiffs have in have in all respects satisfied their obligations under the Agreement and fully performed by making the required payment and undertaking other obligations. Defendants have in all respects breached the Agreement by, among other things, failing to source 200 qualifying talcum powder cases, failing to provide medical and pathological records documenting that the sourced cases meet the Agreement's criteria, and failing to issue rebates or return the full $600,000.00 sourcing fee.

29.     On August 30, 2021, after Plaintiffs learned of Defendants' misconduct, as alleged herein, the parties further agreed that, in light of Defendants' breach of the Agreement, Defendants would pay a total of $650,000.00 in three specified payments to be paid by Defendants to Plaintiffs on dates certain and within 84 days.  Defendants made the first payment in the amount of $250,000.00 on or about September 3, 2021 and made the second payment in the amount of $200,000.00 on or about October 15, 2021 but failed to make the final payment in the amount of $200,000.00 as agreed.

30.     On or about December 3, 2021, the parties further agreed that, in light of Defendants' breach of the Agreement, Defendants would pay an additional $100,000.00 on or before December 10, 2021 and pay an additional $125,000.00 on or before January 24, 2022. Defendants made the first payment in the amount of $100,000.00 on or about December 10, 2021 but failed to make the final payment in the amount of $125,000.00 as agreed.

## COUNT I – BREACH OF CONTRACT
### Defendant Federal City Law Group, PLLC

31.     Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

32.     The Agreement constitutes a valid and enforceable contract.

33.     Defendants breached the contract as described above.

34.     Plaintiffs in all respects satisfied their obligations under the contract.

35.     As a result of Defendants' above-described breaches of contract, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their  sourcing fee, the time value of their investment, and earned legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendants' breach.

36.     Demand has been made upon Defendants for repayment, but Defendants have failed and refused to repay the amount due Plaintiffs.

**COUNT II – BREACH OF FIDUCIARY DUTIES**
**Defendant Federal City Law Group, PLLC**

37.     Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

38.     By virtue of the parties' agreement to undertake joint representation of clients with viable talcum powder claims and to profit therefrom, the parties agreed to engage in a joint venture with respect to the talcum powder claims. As such, Defendants owed fiduciary duties to Plaintiffs to act in good faith, to satisfy their obligations under the Agreement, to disclose any and all relevant information, to follow up on and ensure that 200 cases meeting specific criteria as documented by medical and pathological records obtained by FCLG and provided to Plaintiffs would be soured no later than March 1, 2021, to rebate $3,000.00 to Plaintiffs for each case not sourced as provided in the Agreement, plus certain additional reimbursements where applicable, and to ensure that Plaintiffs were being given all of the information to which they were entitled and that all information about the joint venture was complete and accurate. Further, because Defendants agreed to use Plaintiffs' funds exclusively for Plaintiffs' benefit, Defendants owed a fiduciary duty to Plaintiffs with respect to the specific funds paid, to use the funds appropriately, for the agreed purpose

39.     Defendants breached their fiduciary duties to Plaintiffs as described above in that they failed to provide Plaintiffs with material information, omitted material information, misused and failed to account for the funds provided, failed to provide clients and medical records and otherwise failed to carry out their obligations.

40. As a result of Defendants' above-described breaches of fiduciary duties, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their sourcing fee, the time value of their investment, and earned legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendants' breach.

## COUNT III – FRAUD
## Defendant Federal City Law Group, PLLC

41. Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

42. Defendants falsely stated that they have the expertise and ability to identify, locate, and contract with individuals with viable talcum powder product liability claims and would, in fact, source 200 cases meeting specific criteria as documented by medical and pathological records obtained by FCLG and provided to Plaintiffs no later than March 1, 2021 or, failing that, would rebate $3,000.00 to Plaintiffs for each case not sourced as provided in the Agreement, plus certain additional reimbursements where applicable.

43. The representations contained in paragraphs 22, 24 and 25 were false representations of material fact in that there was no tested methodology for screening clients, Defendants did not have 30 client cases with medical records immediately available and Defendants did not have the background and expertise to secure clients as promised.

44. Defendants made these statements knowing they were false and with the intent to induce Plaintiffs to pay them $600,000.00.

45. Plaintiffs reasonably relied upon the truth of Defendants' agents statements in that they said they knew attorney Jim Onder well and regularly worked with him, Defendant Dunken is an attorney and both individual Defendants were agents and principals of FCLP and ACAP.

46.     As a result, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their sourcing fee, the time value of their investment, and earned legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendant's fraud.

47.     These acts were malicious, fraudulent, and oppressive, justifying an award of punitive damages so that Defendant will not engage in such conduct in the future.

## COUNT IV – NEGLIGENT MISREPRESENTATION
### Defendant Federal City Law Group, PLLC

48.     Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein. This Count is plead in the alternative to Count III.

49.     Defendants falsely stated that they have the expertise and ability to identify, locate, and contract with individuals with viable talcum powder product liability claims and would, in fact, source 200 cases meeting specific criteria as documented by medical and pathological records obtained by FCLG and provided to Plaintiffs no later than March 1, 2021 or, failing that, would rebate $3,000.00 to Plaintiffs for each case not sourced as provided in the Agreement, plus certain additional reimbursements where applicable. Plaintiffs also made the representations as alleged in paragraphs 22, 24 and 25 of this First Amended Complaint.

50.     Defendants made these statements negligently without exercising ordinary care to ascertain their truth and with the intent to induce Plaintiffs to pay them $600,000.00.

51.     Plaintiffs reasonably relied upon the truth of Defendants' statements.

52.     As a result, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their sourcing fee, the time value of their investment, and earned legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendants' conduct.

## COUNT V – BREACH OF FIDUCIARY DUTIES
## Defendant Bert "Terry" Dunken

53.     Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

54.     By virtue of their agreement to undertake joint representation of clients with viable talcum powder claims and to profit therefrom, Defendants owed fiduciary duties to Plaintiffs to act in good faith, to satisfy their obligations under the Agreement, to disclose any and all relevant information, to follow up on and ensure that 200 cases meeting specific criteria as documented by medical and pathological records obtained by FCLG and provided to Plaintiffs would be soured no later than March 1, 2021, to rebate $3,000.00 to Plaintiffs for each case not sourced as provided in the Agreement, plus certain additional reimbursements where applicable, and to ensure that Plaintiffs were being given all of the information to which they were entitled and that all information about the joint venture was complete and accurate. Further, Defendants, including Defendant Dunken, agreed to use Plaintiffs' funds exclusively for Plaintiffs' benefit, and as such, Defendant owed a fiduciary duty with respect to the specific funds paid, to use the funds appropriately and for the agreed purpose.

55.     Defendants breached their fiduciary duties to Plaintiffs as described above in that he failed to provide Plaintiffs with material information, omitted material information, misused and failed to account for the funds provided, failed to provide clients and medical records and otherwise failed to carry out the obligations of the agreement. Dunken also breached his fiduciary duty by failing to disclose his interest in the Dunken Law Firm, PLLC, which is a competitor of the venture between the parties.

56.     As a result of Defendant's above-described breaches of fiduciary duties, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their

sourcing fee, the time value of their investment, and earned legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendant's breach.

## COUNT VI – FRAUD
## Defendant Bert "Terry" Dunken

57.    Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

58.    Defendant falsely stated that Defendants had the expertise and ability to identify, locate, and contract with individuals with viable talcum powder product liability claims and would, in fact, source 200 cases meeting specific criteria as documented by medical and pathological records obtained by FCLG and provided to Plaintiffs no later than March 1, 2021 or, failing that, would rebate $3,000.00 to Plaintiffs for each case not sourced as provided in the Agreement, plus certain additional reimbursements where applicable.

59.    The representations contained in paragraphs 22, 24 and 25 of this First Amended Complaint which were false statements of material fact in that there was no tested methodology for screening clients, Defendants did not have 30 clients with medical records immediately available and Defendants did not have the background or expertise to secure clients as promised.

60.    Defendant made these statements knowing they were false and with the intent to induce Plaintiffs to pay them $600,000.00.  Plaintiffs also made the representations contained in paragraphs 22, 24 and 25 of this First Amended Complaint.

61.    Plaintiffs reasonably relied upon the truth of Defendant's statements in that Defendant said he knew attorney Jim Onder well and regularly worked with him,  and Defendant is an attorney and agent and principal of FCLP and ACAP.

62.     As a result, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their sourcing fee, the time value of their investment, and earned legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendants' fraud.

63.     These acts were malicious, fraudulent, and oppressive, justifying an award of punitive damages so that Defendant will not engage in such conduct in the future.

## COUNT VII – NEGLIGENT MISREPRESENTATION
### Defendant Bert "Terry" Duncan

64.     Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein. This Count is brought in the alternative to Count VI.

65.     Defendant falsely stated that Defendants had the expertise and ability to identify, locate, and contract with individuals with viable talcum powder product liability claims and would, in fact, source 200 cases meeting specific criteria as documented by medical and pathological records obtained by FCLG and provided to Plaintiffs no later than March 1, 2021 or, failing that, would rebate $3,000.00 to Plaintiffs for each case not sourced as provided in the Agreement, plus certain additional reimbursements where applicable.

66.     Defendant made these statements negligently without exercising ordinary care to ascertain their truth and with the intent to induce Plaintiffs to pay them $600,000.00.

67.     Plaintiffs reasonably relied upon the truth of Defendant's statements.

68.     As a result, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their sourcing fee, the time value of their investment, and earned legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendant's conduct.

## COUNT VIII – BREACH OF FIDUCIARY DUTIES

**Defendant Greg Griffin**

69.     Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

70.     By virtue of their agreement to undertake joint representation of clients with viable talcum powder claims and to profit therefrom, Defendants owed fiduciary duties to Plaintiffs to act in good faith, to satisfy their obligations under the Agreement, to disclose any and all relevant information, to follow up on and ensure that 200 cases meeting specific criteria as documented by medical and pathological records obtained by FCLG and provided to Plaintiffs would be soured no later than March 1, 2021, to rebate $3,000.00 to Plaintiffs for each case not sourced as provided in the Agreement, plus certain additional reimbursements where applicable, and to ensure that Plaintiffs were being given all of the information to which they were entitled and that all information about the joint venture was complete and accurate.  Further, because Defendants agreed to use Plaintiffs' fund exclusively for Plaintiffs' benefit, Defendants, including Defendant Griffin, owed a fiduciary duty to Plaintiffs with respect to the specific funds paid, to use the funds appropriately, for the agreed purpose.

71.     Defendant breached his fiduciary duties to Plaintiffs as described above in that he failed to provide material information to Plaintiffs, omitted material information, misused and failed to account for the funds Plaintiffs provided, failed to provide clients and medical records and otherwise failed to carry out the obligations of the agreement.

72.     As a result of Defendant's above-described breaches of fiduciary duties, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their sourcing fee, the time value of their investment, and earned legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendant's breach.

## COUNT IX – FRAUD
### Defendant Greg Griffin

73.     Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

74.     Defendant falsely stated that Defendants had the expertise and ability to identify, locate, and contract with individuals with viable talcum powder product liability claims and would, in fact, source 200 cases meeting specific criteria as documented by medical and pathological records obtained by FCLG and provided to Plaintiffs no later than March 1, 2021 or, failing that, would rebate $3,000.00 to Plaintiffs for each case not sourced as provided in the Agreement, plus certain additional reimbursements where applicable.

75.     The representations contained in paragraphs 22, 24 and 25 of this First Amended Complaint were false representations of material fact in that there was no tested methodology for screening clients, Defendants did have 30 client cases with medical records immediately available and Defendants did not have the expertise and background to secure clients as promised.

76.     Defendant made these statements knowing they were false and with the intent to induce Plaintiffs to pay them $600,000.00.

77.     Plaintiffs reasonably relied upon the truth of Defendant's statements in that Defendant said he knew attorney Jim Onder and worked regularly with him and because he was an agent and principal FCLP and ACAP and because of the background he pretended to have.

78.     As a result, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their sourcing fee, the time value of their investment, and earned legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendant's fraud.

79.     These acts were malicious, fraudulent, and oppressive, justifying an award of punitive damages so that Defendant will not engage in such conduct in the future.

## COUNT X – NEGLIGENT MISREPRESENTATION
### Defendant Greg Griffin

80.     Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein. This Count is brought in the alternative to Count IX.

81.     Defendant falsely stated that Defendants had the expertise and ability to identify, locate, and contract with individuals with viable talcum powder product liability claims and would, in fact, source 200 cases meeting specific criteria as documented by medical and pathological records obtained by FCLG and provided to Plaintiffs no later than March 1, 2021 or, failing that, would rebate $3,000.00 to Plaintiffs for each case not sourced as provided in the Agreement, plus certain additional reimbursements where applicable.

82.     Defendant made these statements negligently without exercising ordinary care to ascertain their truth and with the intent to induce Plaintiffs to pay them $600,000.00.

83.     Plaintiffs reasonably relied upon the truth of Defendants' statements.

84.     As a result, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their sourcing fee, the time value of their investment, and earned legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendant's conduct.

## COUNT XI – UNJUST ENRICHMENT
### Defendants Greg Griffin and Terry Dunken

85.     Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

86.     Defendants Griffin and Dunken have unjustly retained hundreds of thousands of dollars to Plaintiffs' detriment and such retention by Defendants violates the fundamental principles of justice, equity, and good conscience.

## COUNT XII – BREACH OF CONTRACT
### Defendant ACAP, LLC

87.     Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

88.     The Agreement constitutes a valid and enforceable contract. It was entered into by Griffin and Dunken as the agents and or apparent agents of ACAP.

89.     Defendants breached the contract as described above.

90.     Plaintiffs in all respects satisfied their obligations under the contract.

91.     As a result of Defendants' above-described breaches of contract, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their sourcing fee, the time value of their investment, and earned legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendants' breach.

92.     Demand has been made upon Defendants for repayment, but Defendants have failed and refused to repay the amount due Plaintiffs.

## COUNT XIII – BREACH OF FIDUCIARY DUTIES
### Defendant ACAP, LLC

93.     Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

94.     By virtue of their agreement to undertake joint representation of clients with viable talcum powder claims and to profit therefrom, Defendants, including ACAP, owed fiduciary duties to Plaintiffs to act in good faith, to satisfy their obligations under the Agreement, to disclose any

and all relevant information, to follow up on and ensure that 200 cases meeting specific criteria as documented by medical and pathological records obtained by FCLG and provided to Plaintiffs would be soured no later than March 1, 2021, to rebate $3,000.00 to Plaintiffs for each case not sourced as provided in the Agreement, plus certain additional reimbursements where applicable, and to ensure that Plaintiffs were being given all of the information to which they were entitled and that all information about the joint venture was complete and accurate. Further, because Defendants agreed to use Plaintiffs' funds exclusively for Plaintiffs' benefit, Defendant owed a fiduciary duty to Plaintiffs with respect to the funds paid, to use the funds appropriately, for the agreed purpose.

95.     Defendant breached its fiduciary duties to Plaintiffs as described above in that it failed to provide Plaintiffs with material information, omitted material information, misused and failed to account for the funds provided, failed to provide clients and medical records and otherwise failed to carry out its obligations.

96.     As a result of Defendant's above-described breaches of fiduciary duties, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their sourcing fee, the time value of their investment, and earned legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendant's breach.

### COUNT XIV – QUANTUM MERUIT
### Defendant ACAP, LLC

97.     Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

98.     Plaintiff paid Defendants $600,000.00 in exchange for Defendants' promise to source 200 cases meeting specific criteria as documented by medical and pathological records obtained by FCLG and provided to Plaintiffs no later than March 1, 2021.

99.     On information and belief, Defendant received a valuable benefit from Plaintiffs, including payment of the full sourcing fee.

100.    Defendant's retention of that benefit is unjust under the circumstances, on information and belief.

101.    Plaintiffs are entitled to a remedy in quantum meruit for the full value of the benefit conferred.

## COUNT XV – FRAUD
## Defendant ACAP, LLC

102.    Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

103.    Defendant's agents falsely stated that Defendants had the expertise and ability to identify, locate, and contract with individuals with viable talcum powder product liability claims and would, in fact, source 200 cases meeting specific criteria as documented by medical and pathological records obtained by FCLG and provided to Plaintiffs no later than March 1, 2021 or, failing that, would rebate $3,000.00 to Plaintiffs for each case not sourced as provided in the Agreement, plus certain additional reimbursements where applicable.

104.    The representations contained in paragraphs 22, 24 and 25 of the First Amended Complaint were false, material representations of fact in that there was no tested methodology for screening clients, Defendants did not have 30 clients with medical records immediately available and Defendants did not have the background and expertise to secure clients as promised.

105.    Defendant's agents made these statements knowing they were false and with the intent to induce Plaintiffs to pay them $600,000.00.

106.    Plaintiffs reasonably relied upon the truth of Defendant's statements in that Defendant's agents said that they knew attorney Jim Onder well and regularly worked with him,

Defendant Dunken is an attorney, Defendants pretended to have expertise and background which caused their representations to appear reasonable and because of the reputation of ACAP.

107.    As a result, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their sourcing fee, the time value of their investment, and earned legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendant's fraud.

108.    These acts were malicious, fraudulent, and oppressive, justifying an award of punitive damages so that Defendant will not engage in such conduct in the future.

## COUNT XVI – NEGLIGENT MISREPRESENTATION
### Defendant ACAP, LLC

109.    Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein. This Count is brought in the alternative to Count XV.

110.    Defendant's agents falsely stated that they have the expertise and ability to identify, locate, and contract with individuals with viable talcum powder product liability claims and would, in fact, source 200 cases meeting specific criteria as documented by medical and pathological records obtained by FCLG and provided to Plaintiffs no later than March 1, 2021 or, failing that, would rebate $3,000.00 to Plaintiffs for each case not sourced as provided in the Agreement, plus certain additional reimbursements where applicable.

111.    Defendant made these statements negligently without exercising ordinary care to ascertain their truth and with the intent to induce Plaintiffs to pay them $600,000.00.

112.    Plaintiffs reasonably relied upon the truth of Defendant's statements.

113.    As a result, Plaintiffs have been caused to suffer significant damages including, without limitation, the loss of their sourcing fee, the time value of their investment, and earned

legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendant's conduct.

## COUNT XVII – PROMISSORY FRAUD
## ALL DEFENDANTS

114.    Plaintiffs incorporate by reference and reallege the allegations in all of the preceding paragraphs as though fully set forth herein.

115.    Defendants falsely stated that they had the expertise and the ability to identify locate and contract with individuals with viable talcum powder claims and would, in fact, source 200 cases meeting the specific criteria as documented by medical and pathological records obtained by FCLG and provided to Plaintiffs no later than March 1, 2021 or failing that, would rebate $3000.00 to Plaintiffs for each case not sourced as provided in the Agreement, plus certain additional reimbursements.

116.    The representations made in paragraphs 22, 24 and 25 of the First Amended Complaint were false representations of material facts when made in that there was no tested methodology for screening clients, Defendants did not have 30 client cases with medical records immediately available and Defendants did not have the expertise and background to secure clients as promised and further, all of the representations made by Griffin and Dunken were part of a fraudulent scheme in which Defendants had no intention of carrying out any of the promises and representations made to Driscoll.

117.    Defendants made the statements knowing they were false for the sole purpose of having Driscoll pay $600,000.00.

118.    Plaintiffs reasonably relied on the statements, representations and omissions alleged in that Defendants Griffin and Dunken said they worked closely with Jim Onder, Griffin

and Dunken mislead Plaintiffs regarding their background and experience and based on the involvement of FCLG and participation of ACAP.

119.    As a result, Plaintiffs have been caused to suffer significant damages, including, without limitation, the loss of their sourcing fee, the time value of their investment, and earned legal fees, all in an amount to which Plaintiffs would have been entitled but for Defendants' fraud.

120.    Defendants' actions were malicious, fraudulent, and oppressive, justifying an award of punitive damages so that Defendants will not engage in such conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, as follows:

1.    Compensatory damages in an amount to be determined at trial, but in excess of $100,000.00 as to each claim for relief;

2.    Costs and disbursement incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

3.    Interest to the extent available under applicable laws; and

4.    Such other and further damages, including punitive damages, and relief as the Court deems just and proper.


Dated:  June 15, 2022.                          Respectfully Submitted,

                                                **THE DRISCOLL FIRM, LLC and THE**
                                                **DRISCOLL FIRM, P.C.**

                                    By:         */s/ Adrian Vuckovich*
                                                Adrian Vuckovich ( ARDC # 6207978)
                                                av@cb-law.com
                                                Collins Bargione & Vuckovich
                                                One N. LaSalle Street, Suite 300

Chicago, Illinois 60602
Phone: (312) 372-7813

*Attorney for Plaintiffs*

## ATTORNEY ASSOCIATION AGREEMENT

This Attorney Association Agreement (this "**Agreement**") is made on January 4, 2021, by and between The Driscoll Firm, LLC, a Limited Liability Company under the laws of the United States Territory of Puerto Rico (collectively "**TDF**") and Federal City Law Group, PLLC, a professional limited liability company organized under the laws of the State of Arizona ("**FCLG**").

WHEREAS, FCLG includes at least one lawyer and has expertise in sourcing clients having potential personal injury claims against medical device or consumer product manufacturers; and

WHEREAS, TDF desires to engage FCLG to source clients on its behalf on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the premises and covenants contained herein, the parties hereto agree as follows:

1.     SOURCING OF CLIENTS. FCLG shall source 200 Johnson & Johnson talcum powder cases (each a "**Case**" or a "**Client**") on behalf of TDF.

2.     SOURCING FEE. TDF shall pay a fee of $3,000.00 for each Case meeting the criteria set out in Sections 5 and 6 herein sourced by FCLG (the "**Sourcing Fee**"). The Sourcing Fee shall be paid as provided in Section 4 and 6.

3.     RETAINED INTEREST. FCLG shall retain a 20% interest in each Case sourced under this Agreement, such interest to be paid within 14 days after the final settlement of each Case.

4.     PAYMENT TERMS. The Sourcing Fee shall be due from TDF to FCLG according to the following terms;

        a.   $600,000 (Six Hundred Thousand) The sourcing Fee, shall be due upon execution of this Agreement.

5.     CASES MUST MEET ESTABLISHED CRITERIA. All cases must meet the following agreed criteria at the outset, established by medical records including pathological reports. Medical and pathological records evincing any one of the following as the primary and first diagnosis qualifies:

**Initial Qualification:**

    1.  Epithelial Ovarian Cancer; or

    2.  Serous; or

    3.  Papillary serous carcinoma; or



1



FILED DATE: 1/24/2022 4:27 PM 2022L000757

4. Serous papillary carcinoma; or

5. High Grade Serous Carcinoma (HGSC); or

6. Endometrioid; or

7. Clear Cell; or

8. Undifferentiated; or

9. Mucinous; or

10. Borderline Tumors; or

11. Primary Peritoneal; or

12. Fallopian Tube; or

13. Mesothelioma

The foregoing qualifying diagnosis must be established by medical records that include pathological reports substantiating the diagnosis. Without pathological reports substantiating the diagnosis, a case cannot be accurately characterized as qualified. In addition to medical and pathological records establishing a qualifying diagnosis, a case qualifies at the outset/initially only if it includes the following additional criteria below:

• Victim is a woman.

• Victim was over 21 at the time of diagnosis, but not older than 70 years of age at diagnosis.

• Victim used on a **routine basis (4 or more times per week)** Johnson & Johnson's Baby Powder® and/or Shower to Shower® on her genitals for **one or more years** before diagnosis, and can produce at least one living witness to same.

• If victim had a tubal ligation, it occurred after victim began exposure to Johnson & Johnson's Baby Powder® and/or Shower to Shower®.

• If victim had a hysterectomy, it occurred after victim began exposure to Johnson & Johnson's Baby Powder® and/or Shower to Shower®.

• If victim died:

o Person pursuing lawsuit on behalf of Victim has primary standing under the laws of the state in which the decedent died, and therefore has standing to pursue lawsuit on behalf of decedent.

2

FILED DATE: 1/24/2022 4:27 PM   2022L000757

FILED DATE: 1/24/2022 4:27 PM    2022L000757

o Victim death is within the statute of limitations in the state of death, allowing enough time (one month) for law firm to file a lawsuit.

o Caller believes there are one or more eyewitnesses to victim's routine use of Johnson & Johnson's Baby Powder® and/or Shower to Shower® for a minimum of one or more years before diagnosis (spouse, significant other, sister, daughter, female friend, etc.)

o Victim died because of one or more of the three foregoing cancers and not because of an unrelated event, as substantiated by the decedent's death certificate.

o Neither victim nor caller ever hired a lawyer to prosecute this matter.

14.    MATERIAL TERMS ESSENTIAL TO THIS AGREEMENT:

Cases will be sent to The Driscoll Firm, LLC within 48 hours of being retained, so that The Driscoll Firm, LLC can promptly assess any statute of limitations issues and act accordingly. The Driscoll Firm, LLC shall acknowledge receipt of each file within 24 hours of receiving it. The Driscoll Firm, LLC does not want to incur unnecessary labor, time and resources revieing cases sent, and expects that cases meet criteria outlined in section 5. Cases sent to The Driscoll Firm, LLC will meet criteria and medical and pathological records will be sent within 45 days establishing criteria outlined in section 5. If any Case fails to meet the criteria listed in Section 5, FCLG will replace the non-qualifying Case with a case that has medical and pathological records establishing criteria. The Driscoll Firm, LLC requires that all cases subject to this agreement have medical and pathological records establishing criteria by no later than March, 1, 2021.

Settlement Ultimately Determined and Agreed by Johnson & Johnson, Determination and Calculation of Rebates/Repayment/Reimbursements: If FCLG does not source an aggregate of 200 qualified clients, TDF will be entitled to a rebate of $3,000.00 for each Case that is not sourced as provided in this Agreement, and an additional $400 in the event that TDF was required to file a case.

Separately, FCLG will repay TDF $3,000.00 (or $3,400.00 where a filing fee has been paid) as reimbursement for any of the 200 cases that do not meet the settlement criteria for client compensation ultimately determined and agreed by Johnson & Johnson. FCLG will repay The Driscoll Firm, LLC these monies within 30 days of The Driscoll Firm, LLC informing FCLG of the settlement criteria determined and agreed by Johnson & Johnson.

Separately, after the settlement criteria are determined and agreed by Johnson & Johnson and communicated to FCLG, if the values any of the 200 Cases sent under the terms of this agreement are:

(1) between $150,000.00 and $199,999.99, TDF will pay FCLG an additional sourcing cost of $1,500.00 within 30 days of that value being known;

(2) between $200,000.00 and $249,999.99, TDF will pay FCLG an additional sourcing cost of $3,000.00 within 30 days of that value being known;

3

(3) between $250,000.00 and $299,999.99, TDF will pay FCLG an additional sourcing cost of $4,500.00 within 30 days of that value being known;

(4) between $300,000.00 and $349,999.99, TDF will pay FCLG an additional sourcing cost of $6,000.00 within 30 days of that value being known;

(5) between $350,000.00 and $399,999.99 TDF will pay FCLG an additional sourcing cost of $7,500.00 within 30 days of that value being known;

(6) between $400,000.00 and $449,999.99, TDF will pay FCLG an additional sourcing cost of $9,000.00 within 30 days of that value being known;

(7) between $450,000.00 and $499,999.99, TDF will pay FCLG an additional sourcing cost of $10,500.00 within 30 days of that value being known; and

(8) any value meeting or exceeding $500,000.00, TDF will pay FCLG an additional sourcing cost of $12,000.00 withing 30 days of that value being known.

FCLG will receive 20% of the attorneys' fees of all cases, calculated from the amount remaining after common benefit assessment has been subtracted, TDF will receive 80% of all attorney's fees calculated from the amount remaining after common benefit assessment has been subtracted. Parties are able to recover legitimate and reasonable reimbursed costs from clients where appropriate, parties must itemize and detail all expenses sought to be reimbursed.

15.    CASE FILE. For each case, FCLG shall provide TDF with a criteria case file to include the following documents:

      a.  Client Engagement Letter/Retainer as described herein (attached hereto as **Exhibit A**)
      b.  HIPAA Medical Authorization
      c.  Client Intake Form (attached hereto as **Exhibit B**)
      d.  All available medical records establishing criteria as defined herein.

16.    GOVERNING LAW AND FORUM SELECTION CLAUSE. The laws of the State of Illinois and any applicable federal law govern this Agreement. The parties reject arbitration of any disputes that might arise out this agreement. Any and all lawsuits that may be filed that concern any aspect of this agreement are to be filed in Cook County, Illinois or the United States District Court for the Northern District of Illinois.

17.    CONFIDENTIALITY AND COMPLIANCE. Both parties agree than any non-public information obtained under this Agreement is confidential and may not be disclosed without the consent of the other party, except as may be required by applicable law or at the request of a governmental agency. Both parties further agree to abide by all applicable laws pertaining to the Client, including but not limited to the Health Insurance Portability and Accountability Act of 1996. Both parties maintain joint responsibility for clients' matters, and both parties maintain malpractice insurance applicable to all clients' claims at all times throughout this engagement.

4

FILED DATE: 1/24/2022 4:27 PM   2022L000757

18.    USE OF THE DRISCOLL FIRM, LLC'S RETAINER AGREEMENT:  The parties envision retaining new clients utilizing a retainer agreement that includes The Driscoll Firm, LLC as one of the law firms providing services.  FCLG will be the party exchanging this retainer agreement with prospective clients.  FCLG will report to TDF the names and addresses of those parties that have been sent a retainer and not returned the retainer within 14 days, so that TDF can properly disengage those clients and not expose itself to retainer agreements being executed after a clients' statue of limitations has expired.  FCLG will otherwise document the transmission of retainer agreements to and from clients, and will timely provide TDF with this information upon request.

19.    AMENDMENT AND REFORMATION. No amendment to this Agreement is effective unless it is in writing and signed by each party to this Agreement. The parties further agree to amend and reform this Agreement as needed in order to ensure compliance with any applicable state ethical rules and regulations.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement in duplicate counterparts, each of which shall be deemed an original, on the date and year first above written.

The Driscoll Firm, LLC

By:
Name: John Driscoll
Title:          Sole Member

1/4/21

Federal City Law Group, PLLC

By:
Name: Greg Griffin
Title:  Managing Member

12/22/20

5

Thursday, June 9, 2022 at 08:19:52 Central Daylight Time

| | |
|---|---|
| **Subject:** | FW: Talc |
| **Date:** | Wednesday, June 8, 2022 at 1:56:28 PM Central Daylight Time |
| **From:** | John Driscoll |
| **To:** | Adrian Vuckovich |
| **Attachments:** | image001.png |

**From:** Greg Griffin <greg@acaplegal.com>
**Sent:** Tuesday, April 20, 2021 12:12 AM
**To:** John Driscoll <john@thedriscollfirm.com>
**Cc:** tdunken@dunkenlaw.com; Jon Boeve <jon@acaplegal.com>
**Subject:** RE: Talc

Not sure at this moment. I will have all the counts tomorrow and get them to you.

*Regards, Greg*
**Greg Griffin, CEO**
*Greg@acaplegal.com*

**Texas:**
**4655 Techniplex Suite 700**
**Stafford, TX 77477**

**California:**
**21051 Warner Center Lane**
**Suite 250**
**Woodland Hills CA 91367**
**O:** 800.541.6886
**C:** 925.980.9616



**From:** John Driscoll <john@thedriscollfirm.com>
**Sent:** Monday, April 19, 2021 9:10 PM
**To:** Greg Griffin <greg@acaplegal.com>
**Cc:** tdunken@dunkenlaw.com; Jon Boeve <jon@acaplegal.com>
**Subject:** Re: Talc

I'm hoping that the "worked up" cases brings us to the 200 cases spelled out in our written agreement. Does it?

John J. Driscoll

GrouP

EXHIBIT
2

Page 1 of 2

On Apr 19, 2021, at 11:07 PM, Greg Griffin <greg@acaplegal.com> wrote:

John, I will have all the worked up cases to you tomorrow.
*Regards, Greg*
Greg Griffin, CEO
*Greg@acaplegal.com*

**Texas:**
**4655 Techniplex Suite 700**
**Stafford, TX 77477**

**California:**
**21051 Warner Center Lane**
**Suite 250**
**Woodland Hills CA 91367**
O: 800.541.6886
C: 925.980.9616
<image001.png>

**From:** John Driscoll <john@thedriscollfirm.com>
**Sent:** Monday, April 19, 2021 8:52 PM
**To:** tdunken@dunkenlaw.com
**Cc:** Greg Griffin <greg@acaplegal.com>; Jon Boeve <jon@acaplegal.com>
**Subject:** Talc

Greg/Terry/Jon,

Can you deliver the 172 cases owed under our agreement on Tuesday?  I'm becoming concerned, being that we extended the time provided in our written agreement and you have still not delivered the cases.

Please send the cases Tuesday.

John J. Driscoll

**CAUTION** This email was originally sent from a person outside of the company

**CAUTION** This email was originally sent from a person outside of the company

**Subject:** FW: Talc
**Date:** Wednesday, June 8, 2022 at 1:54:14 PM Central Daylight Time
**From:** John Driscoll
**To:** Adrian Vuckovich
**Attachments:** image002.png

**From:** Greg Griffin <greg@acaplegal.com>
**Sent:** Friday, January 29, 2021 10:24 AM
**To:** John Driscoll <john@thedriscollfirm.com>
**Subject:** RE: Talc

Lets catch up sometime today, John. I am going to be on the road throughout the day and can jump on a call. Give me a few time options and we can visit. Are you in PR or St. Loius?

*Regards, Greg*
Greg Griffin, CEO
*Greg@acaplegal.com*

**Texas:**
**4655 Techniplex Suite 700**
**Stafford, TX 77477**

**California:**
**20950 Warner Center Lane**
**Suite E**
**Woodland Hills CA 91367**
**O:** 800.541.6886
**C:** 925.980.9616



**From:** John Driscoll <john@thedriscollfirm.com>
**Sent:** Thursday, January 28, 2021 7:44 PM
**To:** Greg Griffin <greg@acaplegal.com>
**Subject:** Talc

Give me some visibility to what is going on. I need to know everyone that my retainer has been sent to, among other things.

John J. Driscoll

**CAUTION** This email was originally sent from a person outside of the company

**Thursday, June 9, 2022 at 08:21:00 Central Daylight Time**

| | |
|---|---|
| **Subject:** | FW: Talc - Imerys |
| **Date:** | Wednesday, June 8, 2022 at 1:55:39 PM Central Daylight Time |
| **From:** | John Driscoll |
| **To:** | Adrian Vuckovich |
| **Attachments:** | image001.png |

**From:** Greg Griffin <greg@acaplegal.com>
**Sent:** Monday, March 8, 2021 11:02 AM
**To:** John Driscoll <john@thedriscollfirm.com>
**Subject:** RE: Talc - Imerys

*Sorry, John, I found this response email in my "Draft Folder" this morning. I guess I now know why I didn't hear back from you. Again, I apologize:*

At a minimum, yes. I have someone that I'm working with right now that wants to acquire all of our 3200 ACAP case inventory. Our agreement with you on settlement of our Talc inventory would stand within that acquisition.

I also want to speak to you today as your schedule allows. Please let me know what would work best for you?
*Regards, Greg*
Greg Griffin, CEO
*Greg@acaplegal.com*

**Texas:**
**4655 Techniplex Suite 700**
**Stafford, TX 77477**

**California:**
**21051 Warner Center Lane**
**Suite 250**
**Woodland Hills CA 91367**
**O:** 800.541.6886
**C:** 925.980.9616



**From:** John Driscoll <john@thedriscollfirm.com>
**Sent:** Wednesday, March 3, 2021 1:13 PM
**To:** Greg Griffin <greg@acaplegal.com>
**Cc:** Paul Johnson <paul@thedriscollfirm.com>; Tiffany Kelly <tiffany@thedriscollfirm.com>; Jesse Carney <jesse@jjlegal.com>

**Thursday, June 9, 2022 at 08:24:22 Central Daylight Time**

| | |
|---|---|
| **Subject:** | FW: Executed Talc Agreement |
| **Date:** | Wednesday, June 8, 2022 at 1:50:53 PM Central Daylight Time |
| **From:** | John Driscoll |
| **To:** | Adrian Vuckovich |
| **Attachments:** | image003.png, Driscoll Executed Talc Agreement 122220.pdf |

**From:** Greg Griffin <greg@acaplegal.com>
**Sent:** Tuesday, December 22, 2020 2:59 PM
**To:** John Driscoll <john@thedriscollfirm.com>
**Cc:** Terry Dunken <tdunken@dunkenlaw.com>; Terry Dunken <tdunken@gmail.com>; Christopher Bowen <cbowen@dunkenlaw.com>
**Subject:** Executed Talc Agreement

Thanks, John.
*Regards, Greg*
Greg Griffin, CEO
*Greg@acaplegal.com*

**Texas:**
**4655 Techniplex Suite 700**
**Stafford, TX 77477**

**California:**
**20950 Warner Center Lane**
**Suite E**
**Woodland Hills CA 91367**
**O:** 800.541.6886
**C:** 925.980.9616



**Page 1 of 1**

## ATTORNEY ASSOCIATION AGREEMENT

This Attorney Association Agreement (this "**Agreement**") is made on January 4, 2021, by and between The Driscoll Firm, LLC, a Limited Liability Company under the laws of the United States Territory of Puerto Rico (collectively "**TDF**") and Federal City Law Group, PLLC, a professional limited liability company organized under the laws of the State of Arizona ("**FCLG**").

WHEREAS, FCLG includes at least one lawyer and has expertise in sourcing clients having potential personal injury claims against medical device or consumer product manufacturers; and

WHEREAS, TDF desires to engage FCLG to source clients on its behalf on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the premises and covenants contained herein, the parties hereto agree as follows:

1.      SOURCING OF CLIENTS. FCLG shall source 200 Johnson & Johnson talcum powder cases (each a "**Case**" or a "**Client**") on behalf of TDF.

2.      SOURCING FEE. TDF shall pay a fee of $3,000.00 for each Case meeting the criteria set out in Sections 5 and 6 herein sourced by FCLG (the "**Sourcing Fee**"). The Sourcing Fee shall be paid as provided in Section 4 and 6.

3.      RETAINED INTEREST. FCLG shall retain a 20% interest in each Case sourced under this Agreement, such interest to be paid within 14 days after the final settlement of each Case.

4.      PAYMENT TERMS. The Sourcing Fee shall be due from TDF to FCLG according to the following terms;

        a.    $600,000 (Six Hundred Thousand) The sourcing Fee, shall be due upon execution of this Agreement.

5.      CASES MUST MEET ESTABLISHED CRITERIA. All cases must meet the following agreed criteria at the outset, established by medical records including pathological reports. Medical and pathological records evincing any one of the following as the primary and first diagnosis qualifies:

**Initial Qualification:**

1.   Epithelial Ovarian Cancer; or

2.   Serous; or    

3.   Papillary serous carcinoma; or

1

4. Serous papillary carcinoma; or

5. High Grade Serous Carcinoma (HGSC); or

6. Endometrioid; or

7. Clear Cell; or

8. Undifferentiated; or

9. Mucinous; or

10. Borderline Tumors; or

11. Primary Peritoneal; or

12. Fallopian Tube; or

13. Mesothelioma

The foregoing qualifying diagnosis must be established by medical records that include pathological reports substantiating the diagnosis. Without pathological reports substantiating the diagnosis, a case cannot be accurately characterized as qualified. In addition to medical and pathological records establishing a qualifying diagnosis, a case qualifies at the outset/initially only if it includes the following additional criteria below:

• Victim is a woman.

• Victim was over 21 at the time of diagnosis, but not older than 70 years of age at diagnosis.

• Victim used on a **routine basis (4 or more times per week)** Johnson & Johnson's Baby Powder® and/or Shower to Shower® on her genitals for **one or more years** before diagnosis, and can produce at least one living witness to same.

• If victim had a tubal ligation, it occurred after victim began exposure to Johnson & Johnson's Baby Powder® and/or Shower to Shower®.

• If victim had a hysterectomy, it occurred after victim began exposure to Johnson & Johnson's Baby Powder® and/or Shower to Shower®.

• If victim died:

o Person pursuing lawsuit on behalf of Victim has primary standing under the laws of the state in which the decedent died, and therefore has standing to pursue lawsuit on behalf of decedent.

2

o Victim death is within the statute of limitations in the state of death, allowing enough time (one month) for law firm to file a lawsuit.

o Caller believes there are one or more eyewitnesses to victim's routine use of Johnson & Johnson's Baby Powder® and/or Shower to Shower® for a minimum of one or more years before diagnosis (spouse, significant other, sister, daughter, female friend, etc.)

o Victim died because of one or more of the three foregoing cancers and not because of an unrelated event, as substantiated by the decedent's death certificate.

o Neither victim nor caller ever hired a lawyer to prosecute this matter.

14.    MATERIAL TERMS ESSENTIAL TO THIS AGREEMENT:

Cases will be sent to The Driscoll Firm, LLC within 48 hours of being retained, so that The Driscoll Firm, LLC can promptly assess any statute of limitations issues and act accordingly. The Driscoll Firm, LLC shall acknowledge receipt of each file within 24 hours of receiving it. The Driscoll Firm, LLC does not want to incur unnecessary labor, time and resources reviewing cases sent, and expects that cases meet criteria outlined in section 5. Cases sent to The Driscoll Firm, LLC will meet criteria and medical and pathological records will be sent within 45 days establishing criteria outlined in section 5. If any Case fails to meet the criteria listed in Section 5, FCLG will replace the non-qualifying Case with a case that has medical and pathological records establishing criteria. The Driscoll Firm, LLC requires that all cases subject to this agreement have medical and pathological records establishing criteria by no later than March, 1, 2021.

Settlement Ultimately Determined and Agreed by Johnson & Johnson, Determination and Calculation of Rebates/Repayment/Reimbursements: If FCLG does not source an aggregate of 200 qualified clients, TDF will be entitled to a rebate of $3,000.00 for each Case that is not sourced as provided in this Agreement, and an additional $400 in the event that TDF was required to file a case.

Separately, FCLG will repay TDF $3,000.00 (or $3,400.00 where a filing fee has been paid) as reimbursement for any of the 200 cases that do not meet the settlement criteria for client compensation ultimately determined and agreed by Johnson & Johnson. FCLG will repay The Driscoll Firm, LLC these monies within 30 days of The Driscoll Firm, LLC informing FCLG of the settlement criteria determined and agreed by Johnson & Johnson.

Separately, after the settlement criteria are determined and agreed by Johnson & Johnson and communicated to FCLG, if the values any of the 200 Cases sent under the terms of this agreement are:

(1) between $150,000.00 and $199,999.99, TDF will pay FCLG an additional sourcing cost of $1,500.00 within 30 days of that value being known;

(2) between $200,000.00 and $249,999.99, TDF will pay FCLG an additional sourcing cost of $3,000.00 within 30 days of that value being known;

3

(3) between $250,000.00 and $299,999.99, TDF will pay FCLG an additional sourcing cost of $4,500.00 within 30 days of that value being known;

(4) between $300,000.00 and $349,999.99, TDF will pay FCLG an additional sourcing cost of $6,000.00 within 30 days of that value being known;

(5) between $350,000.00 and $399,999.99 TDF will pay FCLG an additional sourcing cost of $7,500.00 within 30 days of that value being known;

(6) between $400,000.00 and $449,999.99, TDF will pay FCLG an additional sourcing cost of $9,000.00 within 30 days of that value being known;

(7) between $450,000.00 and $499,999.99, TDF will pay FCLG an additional sourcing cost of $10,500.00 within 30 days of that value being known; and

(8) any value meeting or exceeding $500,000.00, TDF will pay FCLG an additional sourcing cost of $12,000.00 withing 30 days of that value being known.

FCLG will receive 20% of the attorneys' fees of all cases, calculated from the amount remaining after common benefit assessment has been subtracted, TDF will receive 80% of all attorney's fees calculated from the amount remaining after common benefit assessment has been subtracted. Parties are able to recover legitimate and reasonable reimbursed costs from clients where appropriate, parties must itemize and detail all expenses sought to be reimbursed.

15.    CASE FILE. For each case, FCLG shall provide TDF with a criteria case file to include the following documents:

   a. Client Engagement Letter/Retainer as described herein (attached hereto as **Exhibit A**)
   b. HIPAA Medical Authorization
   c. Client Intake Form (attached hereto as **Exhibit B**)
   d. All available medical records establishing criteria as defined herein.

16.    GOVERNING LAW AND FORUM SELECTION CLAUSE. The laws of the State of Illinois and any applicable federal law govern this Agreement. The parties reject arbitration of any disputes that might arise out this agreement. Any and all lawsuits that may be filed that concern any aspect of this agreement are to be filed in Cook County, Illinois or the United States District Court for the Northern District of Illinois.

17.    CONFIDENTIALITY AND COMPLIANCE. Both parties agree than any non-public information obtained under this Agreement is confidential and may not be disclosed without the consent of the other party, except as may be required by applicable law or at the request of a governmental agency. Both parties further agree to abide by all applicable laws pertaining to the Client, including but not limited to the Health Insurance Portability and Accountability Act of 1996. Both parties maintain joint responsibility for clients' matters, and both parties maintain malpractice insurance applicable to all clients' claims at all times throughout this engagement.

18.    USE OF THE DRISCOLL FIRM, LLC'S RETAINER AGREEMENT:  The parties envision retaining new clients utilizing a retainer agreement that includes The Driscoll Firm, LLC as one of the law firms providing services.  FCLG will be the party exchanging this retainer agreement with prospective clients.  FCLG will report to TDF the names and addresses of those parties that have been sent a retainer and not returned the retainer within 14 days, so that TDF can properly disengage those clients and not expose itself to retainer agreements being executed after a clients' statue of limitations has expired.  FCLG will otherwise document the transmission of retainer agreements to and from clients, and will timely provide TDF with this information upon request.

19.    AMENDMENT AND REFORMATION.  No amendment to this Agreement is effective unless it is in writing and signed by each party to this Agreement. The parties further agree to amend and reform this Agreement as needed in order to ensure compliance with any applicable state ethical rules and regulations.


IN WITNESS WHEREOF, the parties hereto have executed this Agreement in duplicate counterparts, each of which shall be deemed an original, on the date and year first above written.


The Driscoll Firm, LLC

By:
Name: John Driscoll
Title: Sole Member


Federal City Law Group, PLLC

By:
Name: Greg Griffin
Title: Managing Member


5

# The Dunken Law Firm

## Talcum Powder Criteria

**Strongest Cases:** Evidence of talc in tumors in the form of talcum particles. Plaintiff and/or loved ones must also be able to prove regular habitual use of talcum powder products.

**Exposure:** Talcum powder is made from talc, a mineral made up mainly of the elements magnesium, silicon, and oxygen. As a powder, it absorbs moisture well and helps cut down on friction, making it useful for keeping skin dry and helping to prevent rashes. It is widely used in cosmetic products such as baby powder and adult body and facial powders, as well as in a number of other consumer products.

In its natural form, some talc contains asbestos, a substance known to cause cancers in and around the lungs when inhaled.

- People who have long-term exposure to talc particles at work, such as talc miners, are at higher risk of lung cancer from breathing them in.
- Women who apply talcum powder regularly in the genital area have an increased risk of ovarian cancer.

**Products:**

- **Johnson & Johnson**
  - Baby Powder
  - Shower to Shower

- **Colgate Palmolive**
  - Cashmere Bouquet

- **Walmart's Equate Baby Powder**

**Diagnosis:** Must have been diagnosed with ovarian cancer after the year 2005. Must have a positive biopsy showing evidence of talcum powder (tissue samples and/or pathology slides).

**Product Use:** Client used a qualifying talcum powder product for at least five years before cancer diagnosis.

**Age:** Prefer cases where plaintiffs were **diagnosed between 40 and 60 years of age**, but don't turn down clients purely for this reason if fit all other criteria. **No clients under the age of 21**.

**Injury:**

Diagnosis of the following cancers:

- Epithelial ovarian cancer
- Invasive Fallopian Tube Cancer
- Primary Peritoneal Cancer
- Mesothelioma*

Not all ovarian tumors are cancer. Some ovarian tumors may be abnormal but not necessarily cancerous. Client must be **diagnosed** with ovarian cancer.

For death cases, "ovarian cancer" or "mesothelioma" must be the cause of death on the Death Certificate.

5/26/2020

**Automatic Declinations:**

- No ovarian cancer diagnosis
- No usage of talcum product 5 years prior to ovarian cancer diagnosis
- Family history of ovarian cancer
- Client did not use Johnson & Johnson, Colgate Palmolive or Walmart brand talcum powder products
- If Male
- Diagnosed in KENTUCKY, TENNESSEE or outside U.S
- Incarcerated
- Represented by another firm

- **Use of talcum powder manufactured before 1982**
- Product use fewer than 4 years
- Diagnosed prior to 2006
- Long-term use of estrogen hormone replacement therapy (at high dosage) prior to ovarian cancer diagnosis
- Ovarian cancer diagnosis under age 21 or over age 80
- Use of talcum powder ONLY after menopause (Onder is taking)

**Talc Case Tiering**

**Tier 1**

- Diagnosis of ovarian cancer, direct exposure to talc on the perineum (below the pelvic diaphragm and between the legs) for 20+ years of daily use; no prior history of cancer; biopsy results show evidence of talcum powder

- Diagnosis of mesothelioma, direct exposure to talc by inhaling the airborne fibers; biopsy results show evidence of talcum powder*

**Tier 2**

- Diagnosis of ovarian cancer, direct exposure to talc on the perineum (below the pelvic diaphragm and between the legs) for 10+ years of daily use; no prior history of cancer; biopsy results show evidence of talcum powder

**Tier 3**

- Diagnosis of ovarian cancer, direct exposure to talc on the perineum (below the pelvic diaphragm and between the legs) for 5+ years of daily use; no prior history of cancer; biopsy results show evidence of talcum powder

**Tier 4**

- Diagnosis of ovarian cancer, direct exposure to talc on the perineum (below the pelvic diaphragm and between the legs) for fewer than 5 years of daily use; no prior history of cancer; biopsy results show evidence of talcum powder

5/26/2020

**Subject:** FW: Talc
**Date:** Wednesday, June 8, 2022 at 1:47:30 PM Central Daylight Time
**From:** John Driscoll
**To:** Adrian Vuckovich
**Attachments:** image002.png

**From:** Greg Griffin <greg@acaplegal.com>
**Sent:** Saturday, December 19, 2020 7:57 PM
**To:** John Driscoll <john@thedriscollfirm.com>
**Subject:** RE: Talc

I agree, John.

Will you document same or should we use the prior Agreement just rewritten with the above terms? I'm good either way. We will be using Federal City Law Group on the Co-Counsel Agreement.
*Regards, Greg*
Greg Griffin, CEO
*Greg@acaplegal.com*

Texas:
4655 Techniplex Suite 700
Stafford, TX 77477

California:
20950 Warner Center Lane
Suite E
Woodland Hills CA 91367
O: 800.541.6886
C: 925.980.9616



**From:** John Driscoll <john@thedriscollfirm.com>
**Sent:** Saturday, December 19, 2020 2:55 PM
**To:** Greg Griffin <greg@acaplegal.com>
**Subject:** Re: Talc

Let's write it up.

Material terms are, 200 cases that have criteria pathology records and ultimately meet settlement criteria, pay $3000 up front for acquisition cost for each. Dunken pays Driscoll a rebate of $3000 for any case that

does not meet settlement criteria negotiated with Defendant J&J within 30 days of that settlement criteria / grid being know and shared with Dunken.  Driscoll pays increased additional acquisition monies/costs of "A" "B" "C" respectively for any one case with values of "X""Y" "Z" respectively once values become known and finalized.

Dunken to receive 20% of the attorneys fees of all cases, calculated after common benefit assessment has been first subtracted.

John J. Driscoll

> On Dec 19, 2020, at 4:41 PM, Greg Griffin <greg@acaplegal.com> wrote:
>
> Yes, agreed. That is what I was trying to say. Sorry if I confused the issue. $3,000 up front on 200 cases. The make-up happens after you crush J&J 😉
>
> *Regards, Greg*
> Greg Griffin, CEO
> *Greg@acaplegal.com*
>
> **Texas:**
> **4655 Techniplex Suite 700**
> **Stafford, TX 77477**
>
> **California:**
> **20950 Warner Center Lane**
> **Suite E**
> **Woodland Hills CA 91367**
> **O:** 800.541.6886
> **C:** 925.980.9616
> <image002.png>
>
> **From:** John Driscoll <john@thedriscollfirm.com>
> **Sent:** Saturday, December 19, 2020 2:37 PM
> **To:** Greg Griffin <greg@acaplegal.com>
> **Subject:** Re: Talc
>
> I'm happy making those adjustments after we realize those amounts, but not willing to risk more than $3000 per on the front end.  If we realize that a case has a higher value, I'm willing to then pay you the adjustment.  But, being that we're hearing that the case average will be $75,000, I'm not willing to pay more than $3000 per today
>
> John J. Driscoll
>
>> On Dec 19, 2020, at 2:24 PM, Greg Griffin <greg@acaplegal.com> wrote:

What if we set the benchmarks at $100,000, 150,000, 200,000 and above $250,000. Each level increasing the acquisition cost by $1,500 retroactively? That would still leave you below $10,000 even if we reached the top benchmark (good lord willing).

*Regards, Greg*
Greg Griffin, CEO
Greg@acaplegal.com

**Texas:**
**4655 Techniplex Suite 700**
**Stafford, TX 77477**

**California:**
**20950 Warner Center Lane**
**Suite E**
**Woodland Hills CA 91367**
O: 800.541.6886
C: 925.980.9616
<image002.png>

**From:** John Driscoll <john@thedriscollfirm.com>
**Sent:** Thursday, December 17, 2020 9:56 AM
**To:** Greg Griffin <greg@acaplegal.com>
**Subject:** Re: Talc

Greg,

Assuming a case average of $75,000 and a case that ultimately qualifies, I would be willing to pay $3000 for a proved up Talc case, wherein you get 20% of the backend fee with the ability to reimburse your legitimate medical record acquiring costs from the settlement proceeds.

Note, $75,000 is the expected average, meaning cases will be lower too.

I would expect a rebate of the $3000 within 30 days of the settlement grid becoming available for any case that is not compensator on the settlement grid or criteria.

I invite you to tell me what you think about additional monies being paid for acquisition for cases that have settlement values of $150,000; $200,000; $250,000

John J. Driscoll

On Dec 17, 2020, at 10:21 AM, Greg Griffin <greg@acaplegal.com> wrote:

**Page 3 of 4**

Thanks, John
*Regards, Greg*
Greg Griffin, CEO
*Greg@acaplegal.com*

**Texas:**
**4655 Techniplex Suite 700**
**Stafford, TX 77477**

**California:**
**20950 Warner Center Lane**
**Suite E**
**Woodland Hills CA 91367**
**O:** 800.541.6886
**C:** 925.980.9616
<image002.png>

**From:** John Driscoll <john@thedriscollfirm.com>
**Sent:** Thursday, December 17, 2020 7:55 AM
**To:** Greg Griffin <greg@acaplegal.com>
**Subject:** Talc

Decades of daily talcum powder use (J&J brands);
A diagnosis of serous invasive ovarian cancer w/in last 10 years;
Age at diagnosis must be between 20 and 70;

No death cases over 5 years ago.

John J. Driscoll

**\*\*CAUTION\*\*** This email was originally sent from a person outside of the company

**\*\*CAUTION\*\*** This email was originally sent from a person outside of the company

**\*\*CAUTION\*\*** This email was originally sent from a person outside of the company

**\*\*CAUTION\*\*** This email was originally sent from a person outside of the company

**Subject:** FW: Follow up
**Date:** Wednesday, June 8, 2022 at 1:46:36 PM Central Daylight Time
**From:** John Driscoll
**To:** Adrian Vuckovich
**Attachments:** image002.png

**From:** Greg Griffin <greg@acaplegal.com>
**Sent:** Thursday, December 10, 2020 7:12 PM
**To:** John Driscoll <john@thedriscollfirm.com>
**Subject:** RE: Follow up

Sounds good, I'll ring you then.
*Regards, Greg*
Greg Griffin, CEO
*Greg@acaplegal.com*

**Texas:**
**4655 Techniplex Suite 700**
**Stafford, TX 77477**

**California:**
**20950 Warner Center Lane**
**Suite E**
**Woodland Hills CA 91367**
O: 800.541.6886
C: 925.980.9616



**From:** John Driscoll <john@thedriscollfirm.com>
**Sent:** Thursday, December 10, 2020 3:10 PM
**To:** Greg Griffin <greg@acaplegal.com>
**Subject:** Re: Follow up

Late tomorrow?  4 pm central?

John J. Driscoll

On Dec 10, 2020, at 5:09 PM, Greg Griffin <greg@acaplegal.com> wrote:

Hey John, ready to discuss the info I have received on our talc cases. When is good for you to visit?

*Regards, Greg*
Greg Griffin, CEO
*Greg@acaplegal.com*

**Texas:**
**4655 Techniplex Suite 700**
**Stafford, TX 77477**

**California:**
**20950 Warner Center Lane**
**Suite E**
**Woodland Hills CA 91367**
**O:** 800.541.6886
**C:** 925.980.9616
<image003.png>

**From:** Greg Griffin
**Sent:** Tuesday, December 08, 2020 9:07 AM
**To:** 'John Driscoll' <john@thedriscollfirm.com>
**Subject:** Follow up

I should be hearing back from our team this morning on the criteria from our previous talc cases so that we can address your specific criteria.

Just want to stay in touch with you on this.

*Regards, Greg*
Greg Griffin, CEO
*Greg@acaplegal.com*

**Texas:**
**4655 Techniplex Suite 700**
**Stafford, TX 77477**

**California:**
**20950 Warner Center Lane**
**Suite E**
**Woodland Hills CA 91367**
**O:** 800.541.6886
**C:** 925.980.9616
<image002.png>

**\*\*CAUTION\*\*** This email was originally sent from a person outside of the company