### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| THE DRISCOLL FIRM, P.C. and THE DRISCOLL FIRM, LLC, | ) ) ) | |
| Plaintiffs, | ) ) ) | No. 22-cv-1536 |
| v. | ) ) | Judge Marvin E. Aspen |
| FEDERAL CITY LAW GROUP, PLLC, BERT "TERRY" DUNKEN, GREG GRIFFIN, and ACAP, LLC, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Defendants move to dismiss Plaintiffs' First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint for Failure to State a Claim ("Mot. to Dismiss") (Dkt. No. 22).)[1] For the following reasons, the motion is granted in part and denied in part.

## FACTUAL BACKGROUND

We take the following facts from the operative First Amended Complaint ("FAC"), "documents attached to the [FAC], documents that are critical to the [FAC] and referred to in it, [] information that is subject to proper judicial notice[,]" and any additional facts set forth in Plaintiffs' opposition, "so long as those facts are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013) (quotation marks omitted). We have accepted as true all well-pleaded factual allegations and drawn all reasonable inferences

---

[1] For all ECF filings, we cite to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

in Plaintiffs' favor. *O'Brien v. Vill. of Lincolnshire*, 955 F.3d 616, 621 (7th Cir. 2020). But if "an exhibit attached to or referenced by the" FAC contradicts Plaintiffs' allegations, "the exhibit takes precedence." *Phillips*, 714 F.3d at 1020.

Plaintiff The Driscoll Firm, P.C. ("Driscoll P.C.") is a law firm and a professional corporation. (FAC (Dkt. No. 18) ¶ 1.) Plaintiff The Driscoll Firm, LLC ("Driscoll LLC") is a law firm and a limited liability company. (*Id.* ¶ 2.) Driscoll LLC retains Driscoll P.C. to assist with various aspects of client representation. (*Id.*) Plaintiffs have identical ownership and management. (*Id.*) John Driscoll is the principal of Driscoll P.C. and the sole member of Driscoll LLC. (*Id.* ¶¶ 1, 10; Attorney Association Agreement ("Agreement") at 5.)[2]

Defendant Federal City Law Group, PLLC ("FCLG") is a law firm and professional limited liability company. (FAC ¶ 3.) Defendant ACAP, LLC ("ACAP") is a limited liability company that markets itself as a case-acquisition program that delivers fully reviewed compensable cases to attorneys based on chosen attributes and criteria. (*Id.* ¶¶ 7–8.) Defendant Bert "Terry" Dunken is a member of ACAP and ACAP's General Counsel. (*Id.* ¶¶ 4, 7.) He is also FCLG's Managing Partner, and he was a member of FCLG from November 2020 through early 2021. (*Id.* ¶ 4.) Defendant Greg Griffin is a member of ACAP and ACAP's Chief Executive Officer. (*Id.* ¶ 7.) He was FCLG's "Managing Member" in December 2020. (*Id.* ¶ 5; Agreement at 5.) Plaintiffs allege that Dunken and Griffin acted as FCLG's agents and ACAP's agents or apparent agents during the business dealings at issue. (FAC ¶ 9.)

Plaintiffs and their attorneys litigate mass tort product liability actions, including actions brought by individuals who allege that they or their decedents developed ovarian cancer from

---

[2] The Agreement is attached to the FAC as Exhibit 1. (*See* Dkt. No. 18 at 29–33.) When citing to the Agreement, we refer to the pages and paragraphs of the Agreement instead of the pages of the docket entry.

exposure to talcum powder. (*Id.* ¶ 18.) Plaintiffs "plan to focus a significant portion of their practice on such cases for the next several years." (*Id.*) "Significant resources and expertise are required to identify and contract with viable mass tort claimants," so lawyers seeking to pursue mass tort cases "often enter into attorney association agreements" with other firms, whereby one firm uses its efforts and expertise to identify and locate viable claimants, "and the firms agree to jointly represent such claimants, assume joint financial responsibility for the representation, and share in the profits" of any successful outcomes. (*Id.* ¶¶ 19–20.)

After learning about Defendants from "Jim Onder, a well-respected attorney who handles complex matters involving defective products," Driscoll met with Dunken in 2019. (*Id.* ¶ 21.) During the meeting, Driscoll told Dunken that he intended to pursue cases against Johnson & Johnson based on the talcum powder it manufactured and sold to consumers. (*Id.* ¶ 22.) Dunken responded by saying "that 'we have the resources and expertise to provide hundreds of clients' who have strong, valuable cases." (*Id.*) Driscoll understood Dunken's use of the term "we" to mean himself, FCLG, and ACAP. (*Id.*)

Discussions about the terms of an agreement to source and represent clients who had been seriously injured by Johnson & Johnson's talcum powder followed the meeting, taking place in November and December 2019. (*Id.* ¶¶ 23, 24.) During these discussions, Griffin and Dunken told Driscoll that if he would pay $600,000, they would provide 200 talcum powder clients who fit criteria articulated by Driscoll. (*Id.* ¶ 24.) To obtain Driscoll's agreement to pay the $600,000 immediately upon execution of an agreement, Griffin and Dunken assured Driscoll that: (1) "they had a tested methodology for screening suitable clients" that would fit Driscoll's criteria for cases; (2) they had "already screened potential clients and had more than 30 clients whose medical records were obtained or ordered" and that "were immediately available to be

signed up and have their claims prosecuted"; (3) their experience and tested methodology would enable them to provide 200 clients meeting Driscoll's criteria, along with complete medical records, within 45 days of an executed written agreement and payment of $600,000; and (4) the $600,000 payment would be used exclusively for advertising, screening, and obtaining medical records for Plaintiffs' clients. (*Id.* ¶ 25.)

In reliance upon Griffin's and Dunken's representations, including their statements that they were principals of ACAP and that ACAP would be participating in the business arrangement, Driscoll LLC entered into an attorney association agreement (the "Agreement") with FCLG on January 4, 2021. (*Id.* ¶¶ 10, 26; Agreement at 1, 5.)[3] Under the Agreement, FCLG agreed to source 200 Johnson & Johnson talcum powder cases for Driscoll LLC. (Agreement ¶ 1.) Each case FCLG sourced had to be supported by medical and pathological records showing that the case met certain criteria set forth in the Agreement. (*Id.* ¶ 5.) These records had to be provided for all cases subject to the Agreement by March 1, 2021. (*Id.* ¶ 14.) In return, Driscoll LLC would pay $3,000 for each sourced case that met the criteria. (*Id.* ¶ 2.) Driscoll LLC agreed to pay this "sourcing fee" in an upfront payment of $600,000 upon execution of the Agreement. (*Id.* ¶ 4.) For cases that settled above a certain threshold, Driscoll LLC agreed to pay FCLG "an additional sourcing cost" as well. (*Id.* ¶ 14.) FCLG also retained a 20 percent interest in each case sourced under the Agreement and would receive 20 percent of the attorneys' fees recovered in each settled case. (*Id.* ¶¶ 3, 14.) If FCLG failed to source 200 qualified cases, Driscoll LLC was entitled to a $3,000 rebate for each case that was not sourced.

---

[3] Plaintiffs allege that the Agreement was between themselves and Defendants (e.g., FAC ¶¶ 16, 26, 28), but as discussed in more detail below, the Agreement itself shows that only Driscoll LLC and FCLG are parties to the Agreement. Thus, Plaintiffs' allegations do not control in this instance. *Phillips*, 714 F.3d at 1020; *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010).

(*Id.* ¶ 14.)  The parties agreed that "[n]o amendment to this Agreement is effective unless it is in writing and signed by each party to this Agreement."  (*Id.* ¶ 19.)

Plaintiffs paid FCLG $600,000 upon executing the Agreement.  (FAC ¶¶ 27, 28.) Defendants, however, did not source 200 qualifying cases or provide documentation showing that the cases that were sourced met the Agreement's criteria.  (*Id.* ¶ 28.)  Nor did Defendants issue rebates for the non-sourced cases or return the $600,000 sourcing fee.  (*Id.*)

In view of these failures, Plaintiffs and Defendants agreed in August 2021 that Defendants would pay Plaintiffs a total of $650,000 in three payments within 84 days.  (*Id.* ¶ 29.) Defendants made the first two payments (totaling $450,000) but failed to make the final $200,000 payment as agreed.  (*Id.*)  The parties thereafter agreed that Defendants would pay an additional $100,000 by December 10, 2021, and an additional $125,000 by January 24, 2022. (*Id.* ¶ 30.)  Defendants made the first payment but not the second payment.  (*Id.*)

## PROCEDURAL BACKGROUND

In January 2022, Plaintiffs filed a 32-count Complaint against Defendants in the Circuit Court of Cook County, Illinois.  (*See generally* Complaint (Dkt. No. 1-1).)  With FCLG's and Griffin's consent, Dunken and ACAP removed Plaintiffs' lawsuit to the Northern District of Illinois based on diversity jurisdiction.[4]  (Notice of Removal (Dkt. No. 1) at 1–4; Dkt. Nos. 4–5.)

---

[4] We are satisfied that diversity jurisdiction over Plaintiffs' lawsuit existed when it was removed. *See Grinnell Mut. Reinsurance Co. v. Shierk*, 121 F.3d 1114, 1117 (7th Cir. 1997) (diversity jurisdiction is determined at the time a state court case is removed to federal court).  The amount in controversy exceeded $75,000, 28 U.S.C. § 1332(a), because Plaintiffs' Complaint sought more than $100,000 in damages for each of the thirty-two counts.  (Complaint at Prayer for Relief ¶ 1; Notice of Removal at 2.)  Moreover, there is complete diversity of citizenship between Plaintiffs and Defendants.  *See Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 636 (7th Cir. 2021).  Driscoll P.C. is a citizen of Illinois (where it is incorporated) and Missouri (where it maintains its principal place of business).  (Complaint ¶ 1); *Qin v. Deslongchamps*, 31 F.4th 576, 579 (7th Cir. 2022).  Driscoll LLC is a citizen of Puerto Rico, where its sole member is a citizen. (Complaint ¶ 2); 28 U.S.C. § 1332(e); *Big Shoulders Cap. LLC v. San Luis & Rio Grande R.R.,*

After Defendants moved to dismiss the Complaint (Dkt. No. 10), Plaintiffs obtained leave to amend from Judge Lee[5] and filed the FAC. (Dkt. Nos. 16–18.) In the FAC, both Plaintiffs assert seventeen counts:

- Breach of contract against FCLG (Count I) and ACAP (Count XII);

- Breach of fiduciary duties against FCLG (Count II), Dunken (Count V), Griffin (Count VIII), and ACAP (Count XIII);

- Fraud against FCLG (Count III), Dunken (Count VI), Griffin (Count IX), and ACAP (Count XV);

- Negligent misrepresentation against FCLG (Count IV), Dunken (Count VII), Griffin (Count X), and ACAP (Count XVI);

- Unjust enrichment against Griffin and Dunken (Count XI);

- Quantum meruit against ACAP (Count XIV); and

- Promissory fraud against all Defendants (Count XVII).

(FAC ¶¶ 31–120.) Defendants now move to dismiss all of Plaintiffs' claims with prejudice. (Mot. to Dismiss at 3.)

## LEGAL STANDARD

At the Rule 12(b)(6) stage, "we test the sufficiency of the complaint, not the merits of the case." *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 885 (7th Cir. 2022). "We construe the complaint in the light most favorable to [the] plaintiff, accept all well-pleaded facts as true, and draw reasonable inferences in [the] plaintiff's favor." *Taha v. Int'l Bhd. of Teamsters*, 947 F.3d

---

*Inc.*, 13 F.4th 560, 565 (7th Cir. 2021). On the other side of the "v." are citizens of Texas and California: Dunken is a citizen of Texas, Griffin is a citizen of California, and both FCLG and ACAP are citizens of Texas and California based on their members' citizenship. (Complaint ¶¶ 3–5, 7; Affidavit of Bert "Terry" Dunken (Dkt. No. 1-2) ¶ 4.)

[5] The case was originally assigned to the Honorable John Z. Lee, but it was reassigned to us following Judge Lee's elevation to the Court of Appeals for the Seventh Circuit. (Dkt. No. 28.)

464, 469 (7th Cir. 2020). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "If the well-pleaded allegations plausibly suggest—as opposed to possibly suggest—that the plaintiff[ ] [is] entitled to relief, the case enters discovery." *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019).

Claims that are based on allegations of fraud must also satisfy Rule 9(b), which requires a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446–47 (7th Cir. 2011). "This ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (citing *Pirelli*, 631 F.3d at 441–42).

## ANALYSIS

Defendants' arguments for dismissal fall into two categories. First, Defendants argue that we should dismiss certain claims based on the party bringing the claim or the party against whom the claim is brought. (Mot. to Dismiss at 3, 6–8.) Second, Defendants argue that we should dismiss all of Plaintiffs' claims based on their failure to state a claim under controlling law. (*Id.* at 8–16.) Both sides agree that Illinois substantive law governs Plaintiffs' claims. (*Id.* at 6 n.6; *see generally* Response to Motion to Dismiss First Amended Complaint ("Resp.") (Dkt. No. 26) (citing Illinois law throughout)); *see also Munoz v. Nucor Steel Kankakee, Inc.*, 44 F.4th 595,

599 n.3 (7th Cir. 2022) (where neither party raises a conflict-of-law issue in a diversity case, "the applicable law is that of the state where the federal district court sits").

## I.     Party-Based Arguments

### A.     Claims Asserted by Driscoll P.C.

Defendants argue that we should dismiss all the claims brought by Driscoll P.C. because it "is not a party to or otherwise referenced in the Agreement," and the FAC does not include any allegations identifying Driscoll P.C.'s role in the relevant events.  (Mot. to Dismiss at 6–7.)  In response, Plaintiffs contend that because the FAC alleges that Driscoll LLC retains Driscoll P.C. to assist with client representation, "Defendants' conduct impacted the attorneys' ability to prosecute cases."  (Resp. at 13.)  Moreover, Plaintiffs continue, the FAC alleges that "attorney ownership is the same in both entities," so the alleged misconduct supports claims brought by both entities.  (*Id.*)

The FAC's allegations do not establish that Driscoll P.C. is a proper plaintiff.  We start with Driscoll P.C.'s breach-of-contract claims against FCLG and ACAP.  "Under Illinois law, a cause of action based on a contract may be brought only by a party to that contract, by someone in privity with such a party, or by an intended third-party beneficiary of the contract[.]"  *Kaplan v. Shure Bros.*, 266 F.3d 598, 602 (7th Cir. 2001) (internal citations omitted).  Driscoll P.C. is not a named party in the Agreement or a signatory to the Agreement.  The Agreement instead identifies Driscoll LLC and FCLG as the contracting parties, and the signature blocks of the Agreement are executed on behalf of Driscoll LLC and FCLG.  (Agreement at 1, 5.)  Consequently, Driscoll P.C. is not a party to the Agreement.  *Smith v. Clark Equip. Co.*, 136 Ill. App. 3d 800, 804 (1st Dist. 1985) ("Since Clark is not a named party and not a signatory to the agreement, it is not a party to the contract.").  Plaintiffs also do not contend that Driscoll P.C. is

in privity with Driscoll LLC or a third-party beneficiary of the Agreement.  (Resp. at 13.)
Therefore, Driscoll P.C. is not a proper plaintiff for the breach-of-contract claims.

The same is true for the other claims asserted in this lawsuit.  Driscoll P.C. and Driscoll
LLC are separate entities organized under different laws with different principal places of
business.  (FAC ¶¶ 1–2.)  The mere fact that they have the same ownership and management (*id.*
¶ 2) does not plausibly suggest that alleged misconduct directed at Driscoll LLC provides the
basis for claims asserted by Driscoll P.C.  Nor does the allegation that "Driscoll LLC retains
Driscoll P.C. to assist with various aspects of" client representation.  (*Id.*)  Even if we accept
Plaintiffs' apparent assertion that Defendants' misconduct impacted the ability of Driscoll P.C.'s
attorneys to prosecute cases (Resp. at 13), Plaintiffs do not explain (or point to factual allegations
showing) how this impact translates into any cognizable claim brought by Driscoll P.C.

All counts brought by Driscoll P.C. are dismissed.  For the remainder of this opinion, our
analysis will consider the FAC's allegations and claims only as they pertain to Driscoll LLC.

### B.      Claims Asserted Against ACAP

Defendants argue that we should dismiss all of Driscoll LLC's claims against ACAP
because Plaintiffs have not plausibly pled "a sufficient connection between ACAP and the
substance of this lawsuit."  (Mot. to Dismiss at 7.)  Defendants contend that Plaintiffs' cursory
allegations regarding ACAP "are contradicted by the express terms of the Agreement," which
show that FCLG, not ACAP, would serve as the counterparty for the transaction at issue.  (*Id.* at
7–8.)

We agree that the FAC does not state a claim against ACAP for breach of contract. Generally, only a party to a contract can be liable for breaching that contract.[6] *Northbound Grp., Inc. v. Norvax, Inc.*, 795 F.3d 647, 650–51 (7th Cir. 2015); *Cima v. WellPoint Health Networks, Inc.*, 556 F. Supp. 2d 901, 905 (S.D. Ill. 2008). ACAP is not a named party in the Agreement or a signatory to the Agreement (Agreement at 1, 5), so it is not a party to the Agreement, *Smith*, 136 Ill. App. 3d at 804.

Plaintiffs nonetheless contend that ACAP made itself a party to the Agreement through its actions. (Resp. at 6–7.) In December 2020, Griffin sent the executed Agreement to Driscoll from his ACAP email address in an email with an ACAP signature block. (*Id.* at 6; Dkt. No. 18 at 39.) ACAP, through Griffin, then stated in a March 2021 email to Driscoll that someone wanted to acquire ACAP's case inventory and that "*[o]ur* agreement with you on settlement of *our* Talc inventory would stand within that acquisition." (Resp. at 6–7; Dkt. No. 18 at 38 (emphases added).) Relying upon *Bertholf v. Fisk*, a 1918 case from the Supreme Court of Iowa, Plaintiffs contend that these actions show that ACAP inserted itself into the Agreement. (Resp. at 7.)

In *Bertholf*, the manager of Guarantee Motors Company, Fisk, entered an employment contract with Bertholf, the plaintiff. 166 N.W. 713, 714–15 (Iowa 1918). Bertholf paid $500 and, in return, Fisk "employed him for 6 months at an agreed compensation of $20 per week and a further compensation of one-half the net profits upon all sales of automobiles [that] the plaintiff might make in such period." *Id.* at 714. Fisk discharged Bertholf after 11 weeks and "refused to pay him any wages or to return to him any portion of the $500 [that] the plaintiff had paid." *Id.*

---

[6] There are exceptions to this rule, *see, e.g.*, *Northbound Grp.*, 795 F.3d at 650–52, but Plaintiffs do not invoke any of them.

Bertholf sued Fisk and Guarantee Motors jointly for breaching the employment contract. *Id.* at 714–15. Although Guarantee Motors did not sign the contract, the contract could not be performed without its assent—the contract expressly stated that the cars to be sold were Guarantee Motors cars, Bertholf's weekly salary was paid by Guarantee Motors, and Bertholf's commissions would be paid by Guarantee Motors. *Id.* at 715–16. Moreover, Bertholf's $500 payment was made to and accepted by Guarantee Motors. *Id.* at 716. Based on these facts, the court found that Guarantee Motors could be liable for breaching the contract because it ratified the contract and "made itself a party to the contract by mutual conduct and acquiescence, including the acceptance of benefits." *Id.*

*Bertholf* does not support finding that ACAP was a party to the Agreement. For one thing, Illinois law, not Iowa law, governs Driscoll LLC's breach-of-contract claims, and Plaintiffs make no attempt to explain how *Bertholf*'s holding is consistent with Illinois law. In any event, *Bertholf* is distinguishable. First, whereas Bertholf paid the $500 consideration to Guarantee Motors, the FAC does not allege that Driscoll LLC paid the $600,000 sourcing fee to ACAP. To the contrary, the FAC and the Agreement make clear that the sourcing fee would be paid to FCLG. (FAC ¶ 27 ("The Agreement provided, among other things, that . . . [Driscoll LLC] would pay FCLG a sourcing fee in the amount of $600,000.00 upon the execution of the Agreement[.]"); Agreement ¶ 4 ("The Sourcing Fee shall be due from [Driscoll LLC] to FCLG[.]").) Thus, unlike Guarantee Motors, ACAP did not receive the monetary consideration for the contract at issue, which was a vital consideration in the *Bertholf* court's holding. *Bertholf*, 166 N.W. at 716 ("Having received and accepted the benefit of the consideration paid by the plaintiff, [Guarantee Motors] should be deemed to have ratified the contract made by its manager."). Second, the FAC and the attached exhibits do not plausibly suggest that FCLG

could not satisfy its obligations without ACAP's assent. The Agreement does not refer to ACAP by name, and the mere fact that Griffin used an ACAP email address and an ACAP signature block to send communications related to the Agreement does not allow us to reasonably infer that ACAP's participation was necessary for FCLG to perform its contractual obligations. Nor does the March 2021 email from Griffin to Driscoll allow this inference. Without more context, it is not clear what Griffin is saying when he states that someone "wants to acquire all of our 3200 ACAP case inventory" and that "[o]ur agreement with you on settlement of our Talc inventory would stand within that acquisition." (Dkt. No. 18 at 38.) But even if this email indicates that the cases sourced under the Agreement were being sourced from ACAP's case inventory, as Plaintiffs appear to assert, nothing suggests that the cases *had to* be sourced from ACAP's inventory. *Bertholf* does not help Plaintiffs' argument.

So, Driscoll LLC's breach-of-contract claim against ACAP cannot proceed. What about Driscoll LLC's claims against ACAP for breach of fiduciary duties, quantum meruit, fraud, negligent misrepresentation, and promissory estoppel? In seeking an across-the-board dismissal of Driscoll LLC's claims against ACAP, Defendants do not explain with particularity how the FAC's allegations fail to plausibly state any one of these claims.[7] (Mot. to Dismiss at 7–8.) Defendants instead contend that these claims all fail because "the parties expressly agreed that FCLG (not ACAP) would serve as the counterparty for this transaction—as confirmed in the Agreement." (*Id.*) But the Agreement merely shows that FCLG is the counterparty for the contractual transaction contemplated by the Agreement; it does not necessarily preclude Driscoll LLC from bringing *non*-contractual claims against other parties that were allegedly involved in

---

[7] Defendants address these claims' elements later in their motion, where they contend that these claims must be dismissed as to all Defendants. (*See* Mot. to Dismiss at 10–16.) We consider these arguments later in this opinion.

the surrounding business dealings.  Thus, Defendants have not shown that Driscoll LLC's non-contractual claims against ACAP should be dismissed wholesale.  *See Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021) (Rule 12(b)(6) requires "the movant to show entitlement to dismissal");  *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020) ("It is the defendant's burden to establish the complaint's insufficiency.").  Driscoll LLC's non-contractual claims against ACAP, however, may still fall short in view of Defendants' claim-specific arguments.

### C.       Claims Asserted Against Dunken and Griffin

Defendants contend that all of Driscoll LLC's claims against Dunken and Griffin should be dismissed because the FAC fails to identify any acts "that would subject either of them to individual liability."  (Mot. to Dismiss at 8.)  Rather, Defendants continue, Dunken's and Griffin's alleged actions were all undertaken "solely in their capacity as" members or managers of FCLG, and they "cannot be held liable for the actions of FCLG (a limited liability company) solely by reason of taking action as a manager and/or member thereof."  (*Id.*)

We disagree.  As Plaintiffs point out (Resp. at 3), "a member or manager of a limited liability company may be liable under law other than [the Illinois Limited Liability Company Act] for its own wrongful acts or omissions, even when acting or purporting to act on behalf of a limited liability company."  805 Ill. Comp. Stat. 180/10-10(a-5).  Thus, a member or manager who actively participates in an LLC's torts may be personally liable for those torts.  *In re Krook*, 615 B.R. 479, 484 (Bankr. N.D. Ill. 2020).

In response, Defendants contend that Driscoll LLC's claims against Dunken and Griffin do not sound in tort.  (Defendants' Reply in Support of Their Motion to Dismiss Plaintiffs' First Amended Complaint for Failure to State a Claim ("Reply") (Dkt. No. 27) at 6–7 & n.3.)  But the Limited Liability Company Act does not authorize personal liability for tort claims only.  To the contrary, the Act broadly permits LLC managers and members to be held personally liable based

on "law other than" the Act, "*including, but not limited*, to agency, contract, and tort law." 805 Ill. Comp. Stat. 180/10-10(a-5) (emphasis added); *see, e.g.*, *People v. Perry*, 224 Ill. 2d 312, 330 (2007) ("The legislature has on many occasions used the phrases 'including but not limited to' or 'includes but is not limited to' to indicate that the list that follows is intended to be illustrative rather than exhaustive"). What is more, Defendants do not cite any statute or caselaw indicating that LLC members like Dunken and Griffin cannot be found personally liable for non-tort claims. Because Dunken and Griffin can be held personally liable for their alleged misconduct even if they were acting as managers or members of FCLG, we decline to dismiss Driscoll LLC's claims against them on this basis.

## II.      Claim-Based Arguments

### A.      Breach of Contract

Driscoll LLC brings two breach-of-contract claims: one against FCLG and the other against ACAP. (FAC Counts I & XII.) As already discussed, the FAC fails to state a breach-of-contract claim against ACAP, so we consider here only whether it states a breach-of-contract claim against FCLG. To state a claim for breach of contract, a plaintiff must plausibly allege "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 522 (7th Cir. 2022) (quotation marks omitted).

Driscoll LLC has stated a breach-of-contract claim against FCLG. The FAC alleges that the Agreement is a "valid and enforceable contract" (FAC ¶ 32), and the terms of the contract are provided in the Agreement, which is attached as an exhibit. The FAC further alleges that Driscoll LLC performed its obligations under the Agreement by paying $600,000 to FCLG upon the Agreement's execution; that FCLG breached the Agreement by failing to source 200 qualifying cases and provide the required documentation for sourced cases; and that the breach

caused Driscoll LLC to suffer damages, including legal fees and the time value of its investment. (*Id.* ¶¶ 27–28, 33–35.) Nothing more is needed.

In a footnote in their opening motion, Defendants assert that a breach-of-contract claim premised solely on the Agreement fails because the FAC "fails to identify the basis for [Driscoll LLC's] claims—in particular given its admission that FCLG has paid $550,000 in rebates to date." (Mot. to Dismiss at 10 n.12.) Defendants expand on this assertion in their reply, arguing that because "the FAC concedes that FCLG in fact sourced 28 Cases," the $550,000 already paid by FCLG means that Driscoll LLC has no claim for breach of the Agreement. (Reply at 8.) Defendants appear to reason that if FCLG sourced 28 cases, the $550,000 payment exceeds the amount Driscoll LLC would be entitled to from rebates, which is $516,000 ($3,000 for each of the 172 unsourced cases).

There are several problems with this argument. First, it assumes that the payments totaling $550,000 were "rebates" under the Agreement. But the FAC expressly alleges that FCLG "fail[ed] to issue rebates." (FAC ¶ 28.) Moreover, the FAC alleges that FCLG's payments were made pursuant to additional agreements made by the parties "in light of [FCLG's] breach of the Agreement" (*id.* ¶¶ 29–30), which further suggests that they were not made as rebates authorized by the Agreement. Second, the email Defendants say amounts to a concession that 28 cases had been sourced simply indicates that as of April 19, 2021, 172 cases were still owed under the Agreement. (Dkt. No. 18 at 35.) What this email does not say is that the remaining 28 cases were sourced in accordance with the Agreement's terms by being provided with all required records by March 1, 2021. (*See* Agreement ¶ 14.) If any of these 28 cases were not timely sourced with the required documentation, Driscoll LLC arguably would be entitled to a rebate on those cases as well. (*Id.* ("If FCLG does not source an aggregate of 200

qualified clients, [Driscoll LLC] will be entitled to a rebate of $3,000.00 for each Case that is not sourced *as provided in this Agreement*[.]" (emphasis added)).)  Thus, it is not clear from the pleadings that Driscoll LLC was entitled to only $516,000 in rebates.  Finally, even if this were the case, the $550,000 payment does not necessarily mean that Driscoll LLC was not damaged by FCLG's breach of the Agreement.  At this early stage of the proceedings, we do not know the amount or type of damages Driscoll LLC may be entitled to recover if it proves FCLG's breach.  FCLG's $550,000 payment certainly might factor into these determinations, but that is an issue to be developed through discovery and addressed later in the litigation.

Defendants also contend that we should dismiss the breach-of-contract claim against FCLG because it is based not only on the Agreement, but on alleged modifications to the Agreement that were made in August and December 2021.  (Mot. to Dismiss at 9–10 (citing FAC ¶¶ 29–30).)  And the FAC, Defendants continue, fails to allege "key details regarding the terms of these purported" modifications.  (*Id.* at 10.)  But "[d]ismissal of a claim pursuant to Rule 12(b)(6) is an all-or-nothing proposition; we cannot rule on parts of a claim like we can at summary judgment."  *Williams v. City of Chicago*, No. 22-cv-1084, 2022 WL 3716214, at *4 (N.D. Ill. Aug. 29, 2022).  Driscoll LLC has stated a breach-of-contract claim based on FCLG's alleged breach of the Agreement itself.  That is all that is necessary for the entire claim to proceed.  *See Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 587, 589 (7th Cir. 2021) (where the plaintiff alleged three theories of vicarious liability to support his claim, only one theory needed to be viable for the entire claim to move past the pleadings stage).  Defendants may ask Driscoll LLC during discovery whether FCLG's alleged contractual breach includes breaching the alleged agreements made in August and December 2021 and seek additional details about those alleged agreements.  But Defendants will have to wait until summary judgment to assert that these

agreements do not support Driscoll LLC's breach-of-contract claim against FCLG. *See BBL,*
*Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (explaining that summary judgment
allows the court to dismiss parts of claims).

### B. Breach of Fiduciary Duties

Driscoll LLC brings claims for breach of fiduciary duties against each Defendant. (FAC
Counts II, V, VIII, & XIII.) Defendants argue that because Plaintiffs have not adequately pled
the existence of a joint venture, "none of the Defendants owed any fiduciary duties to Plaintiffs."
(Mot. to Dismiss at 10–11.) Plaintiffs respond that they have sufficiently alleged that Defendants
and Plaintiffs were in a joint venture that gave rise to fiduciary duties. (Resp. at 3–5.)

Although "most business relationships do not of themselves create fiduciary obligations,"
joint ventures do. *Pearson v. Hafnia Holdings, Inc.*, No. 90 C 991, 1991 WL 18421, at *4 (N.D.
Ill. Feb. 7, 1991); *see Autotech Tech. Ltd. P'ship v. Automationdirect.com*, 471 F.3d 745, 748
(7th Cir. 2006) ("Fiduciary duties exist as a matter of law in . . . joint ventures."). "A joint
venture is an association of two or more parties to carry on a single enterprise for profit." *Indus.*
*Hard Chrome, Ltd. v. Hetran, Inc.*, 90 F. Supp. 2d 952, 955 (N.D. Ill. 2000). To adequately
plead the existence of a joint venture, a plaintiff must plausibly allege "(1) an express or implied
agreement to carry on some enterprise; (2) a manifestation of intent by the parties to be
associated as a joint venture; (3) a joint interest as shown by the contribution of property,
financial resources, effort, skill, or knowledge; (4) a degree of joint proprietorship or mutual
right to the exercise of control over the enterprise; and (5) a provision for joint sharing of profits
and losses." *Meyer v. A & A Logistics, Inc.*, No. 13 CV 0225, 2014 WL 3687313, at *5 (N.D. Ill.
July 24, 2014) (quoting *Autotech Tech.*, 471 F.3d at 478). The absence of any one of these
elements precludes the existence of a joint venture. *Yokel v. Hite*, 348 Ill. App. 3d 703, 709 (5th
Dist. 2004).

Defendants first contend that there is no basis to conclude that Driscoll LLC was engaged in a joint venture with Dunken, Griffin, or ACAP because none of these defendants was expressly identified as a counterparty to the Agreement. (Mot. to Dismiss at 11.) But a contract identifying these defendants as counterparties to Driscoll LLC was not necessary for a joint venture to exist. *See Apex Med. Rsch., AMR, Inc. v. Arif*, 145 F. Supp. 3d 814, 837 (N.D. Ill. 2015) ("No formal agreement is necessary to form a joint venture[.]") "Even in the absence of a formal agreement, the existence of a joint venture may be inferred from circumstances demonstrating that the parties intended to enter into a joint venture." *Yokel*, 348 Ill. App. 3d at 708. Defendants' motion makes no attempt to demonstrate that the circumstances alleged in the FAC are insufficient to show that Driscoll LLC entered a joint venture with Dunken, Griffin, or ACAP independent of the Agreement. (Mot. to Dismiss at 11.) As such, Defendants have not shown that we should dismiss the breach of fiduciary duty claims against these defendants. *See Marcure*, 992 F.3d at 631; *Gunn*, 968 F.3d at 806.

Defendants also argue that the Agreement does not establish the existence of a joint venture between FCLG and Driscoll LLC. (Mot. to Dismiss at 11.) According to Defendants, the Agreement does not show that the parties were engaging in a "single enterprise," sharing losses, or governing the conduct of the other. (*Id.*) Plaintiffs do not dispute that the Agreement governs the parties' "conduct with respect to the joint venture," but they dispute that the elements identified by Defendants are missing from the FAC and the Agreement. (Resp. at 4–5.)

The FAC fails to plead a joint venture between FCLG and Driscoll LLC because the Agreement does not give FCLG the right to control Driscoll LLC's conduct. "Perhaps the most important element in establishing a joint venture is that of joint control and management," *Yokel*, 348 Ill. App. 3d at 709, which requires "some right by the parties to direct and govern the

conduct of each other in connection with the joint venture," *Ambuul v. Swanson*, 162 Ill. App. 3d 1065, 1069 (1st Dist. 1987). Although FCLG retained an interest in each case it sourced under the Agreement (Agreement ¶¶ 3, 14), it had no control over if and how Driscoll LLC pursued the sourced cases. Nor did FCLG have any say in the criteria for settling these cases. (*See id.* ¶ 14 (providing that Driscoll LLC would inform "FCLG of the settlement criteria determined and agreed by Johnson & Johnson").) Because FCLG had no right to direct or control Driscoll LLC's conduct, we dismiss Driscoll LLC's breach of fiduciary duties claim against FCLG.

### C. Fraud and Promissory Fraud

Driscoll LLC brings claims for fraud and promissory fraud against each Defendant. (FAC Counts III, VI, IX, XV, & XVII.) These claims "are subject to Rule 9(b)'s heightened pleading standard." *Sols. Team, Inc. v. Oak St. Health, MSO, LLC*, No. 17-cv-1879, 2018 WL 11432145, at *4 (N.D. Ill. Mar. 5, 2018). This standard ordinarily requires a plaintiff to describe "the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank*, 649 F.3d at 615 (citation omitted).

We start with Driscoll LLC's fraud claims. To plead fraud, a plaintiff must plausibly allege: "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damages to the plaintiff resulting from such reliance." *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1003 (7th Cir. 2018) (citation omitted). Driscoll LLC bases its fraud claims on the following statements allegedly made to Driscoll:

1. Dunken's statement during a 2019 meeting with Driscoll "that 'we have the resources and expertise to provide hundreds of clients' who have strong, valuable cases."

2. Griffin's and Dunken's statement in November or December 2019 that if Driscoll would pay $600,000, "they would provide 200 talcum powder clients who fit the criteria articulated by Driscoll[.]"

3. Griffin's and Dunken's assurances in November or December 2019 that "they had a tested methodology for screening suitable clients [that] would fit precisely the criteria stated by Driscoll[.]"

4. Griffin's and Dunken's assurances in November or December 2019 that they had "already screened potential clients and had more than 30 clients whose medical records were obtained or ordered [and that] were immediately available to be signed up and their claims prosecuted[.]"

5. Griffin's and Dunken's assurances in November or December 2019 that based on their experience and Defendants' tested methodology, "they would provide 200 cases/clients meeting all of" Driscoll's criteria "along with complete medical records within 45 days of execution of a written agreement and payment of $600,000."

6. Griffin's and Dunken's assurances in November or December 2019 that the $600,000 payment would be used exclusively for screening, advertising, and obtaining medical records for Plaintiffs' clients.

(FAC ¶¶ 21–22, 24–25, 43, 59, 75, 104.)

The third and fourth statements provide viable bases for Driscoll LLC's fraud claims. Assertions by Griffin and Dunken in November or December 2019 that they (or their companies) had a tested methodology for screening suitable clients and that they had more than 30 clients whose medical records were obtained or ordered at that time are statements of fact. We can also reasonably infer that these statements were material, i.e., that Driscoll LLC would not have agreed to move forward with the contemplated arrangement and pay $600,000 upfront if Defendants did not already have a tested screening methodology or more than 30 clients with medical records in hand or on the way. *See Mack v. Plaza Dewitt Ltd. P'ship*, 137 Ill. App. 3d 343, 350 (1st Dist. 1985) ("A misrepresentation is 'material' and therefore actionable if it is such that had the other party been aware of it, he would have acted differently."). If, as Plaintiffs allege, there was no tested screening methodology and Defendants did not have 30 client cases

20

with medical records (FAC ¶¶ 43, 59, 75, 104), these statements were false. As members of

FCLG and ACAP, it is reasonable to infer that Griffin and Dunken knew whether these

statements were true or not, and Driscoll LLC further alleges that Griffin and Dunken made these

statements knowing they were false and with the intent to induce Driscoll LLC to pay $600,000

immediately upon execution of the Agreement. (*Id.* ¶¶ 4–5, 7, 25, 44, 60, 76, 105.) Driscoll

LLC reasonably relied upon these statements, the FAC maintains, based on Dunken's and

Griffin's represented backgrounds, ACAP's reputation, and Dunken's statement that he and the

other defendants had worked extensively with Jim Onder, who is "a well-respected attorney who

handles complex matters involving defective products." (*Id.* ¶¶ 21–22, 26, 45, 61, 77, 106.) And

finally, the FAC alleges that Driscoll LLC has been damaged by its reliance on these statements.

(*Id.* ¶¶ 46, 62, 78, 107.) Thus, Driscoll LLC's fraud claims may proceed to discovery.

Defendants' arguments do not compel a different conclusion. Defendants take issue with

the fact that Driscoll LLC's fraud claims rely upon statements where Dunken and Griffin said

they would do certain things that were later required by the Agreement. (Mot. to Dismiss at 13;

Reply at 10–11.) We agree that some of the alleged fraudulent statements relate "to future or

contingent events, expectations[,] or probabilities," and, as such, do not provide a basis for fraud.

*Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1298 (7th Cir. 1993). But the statements we have

identified, which claim that Defendants already had a tested screening methodology and more

than 30 clients with records lined up, do not fall into this category. Defendants also assert that

Plaintiffs have failed to allege with particularity facts showing that the statements were false or

material, made knowing they were false, and were justifiably relied upon. (Mot. to Dismiss at

12–13; Reply at 11 & n.9.) But viewing the FAC as a whole and drawing all reasonable

inferences in Driscoll LLC's favor, *United States ex rel. Upton v. Family Health Network, Inc.*,

900 F. Supp. 2d 821, 829 (N.D. Ill. 2012), the factual allegations are specific enough to plausibly suggest fraud with respect to Statements #3 and #4, as discussed above.

That brings us to Driscoll LLC's promissory fraud claim. A claim for promissory fraud is based on "a false statement of intent regarding future conduct, as opposed to a false statement of existing or past fact." *Wigod v. Wells Fargo Bank. N.A.*, 673 F.3d 547, 570 (7th Cir. 2012) (quotation marks omitted). "Promissory fraud is generally not actionable in Illinois, but there is an exception to this rule where the false promise or representation of intention of future conduct is the scheme or device to accomplish the fraud." *Bower v. Jones*, 978 F.2d 1004, 1011 (7th Cir. 1992) (quotation marks omitted). The "scheme or device" exception "applies where a party makes a promise of performance, not intending to keep the promise but intending for another party to rely on it, and where the other party relies on it to his detriment." *Id.* (quotation marks omitted). Because promissory fraud requires a scheme or device to accomplish the fraud, a plaintiff must "point to specific, objective manifestations of fraudulent intent—a scheme or device"—to state a claim for promissory fraud. *Id.* at 1012 (citation omitted). "If the rule were otherwise, anyone with a breach of contract claim could open the door to tort damages by alleging that the promises broken were never intended to be performed. *Id.* (citation omitted). The alleged scheme or device to defraud "requires a pattern of fraudulent statements . . . or one particularly egregious fraudulent statement." *BPI Energy Holdings, Inc. v. IEC (Montgomery), LLC*, 664 F.3d 131, 136 (7th Cir. 2011).

We agree with Defendants that the FAC does not state a promissory fraud claim. Although the FAC alleges that all of Griffin's and Dunken's representations "were part of a fraudulent scheme in which Defendants had no intention of carrying out any of the promises and representations made to Driscoll" (FAC ¶ 116), this allegation is conclusory and lacking in

factual support. *See Brdecka v. Gleaner Life Ins. Soc'y*, No. 02 C 3076, 2002 WL 1949743, at *3 (N.D. Ill. Aug. 23, 2002) ("Mere assertions that the defendant had no intention of keeping its promise are insufficient to state a claim for promissory fraud."). Nor does anything else alleged in the FAC supply the required "specific, objective manifestations of fraudulent intent." *Bower*, 978 F.2d at 1012.

Arguing otherwise, Plaintiffs point to the March 2021 email where Griffin tells Driscoll that someone wants to acquire ACAP's case inventory and that "[o]ur agreement with you on settlement of our Talc inventory would stand within that acquisition." (Resp. at 10–11; Dkt. No. 18 at 38.) Plaintiffs read this email as evidencing Griffin's intention to fraudulently sell a non-existent Talc inventory to a third party by using Plaintiffs' involvement to legitimize the sale. (Resp. at 11.) This is not a reasonable reading of the email, but even it was, the purported scheme to defraud would have been directed at the third party, not Driscoll LLC. Plaintiffs alternatively posit that Griffin's identification of an interested third-party buyer was a "fake story told to mislead Plaintiffs into believing others were interested in Defendants' lies." (*Id.*) This is "sheer speculation" that we refuse to credit. *Taha*, 947 F.3d at 469. Moreover, by the time Griffin sent the email, Driscoll LLC already had made the $600,000 payment (see FAC ¶¶ 27–28), so Driscoll LLC could not have relied upon the email in deciding to make the payment, as Plaintiffs allege (*id.* ¶¶ 116–18). Thus, we dismiss Driscoll LLC's promissory fraud claim.

### D.    Negligent Misrepresentation

Driscoll LLC asserts a negligent misrepresentation claim against each Defendant. (FAC Counts IV, VII, X, & XVI.) To plead a claim for negligent misrepresentation, a plaintiff must plausibly allege: "(1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to

the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information." *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833–34 (7th Cir. 2007) (citation omitted).

Defendants argue that Plaintiffs' allegation that Defendants made the statements at issue "negligently without exercising ordinary care to ascertain their truth" is conclusory and unsupported by any factual allegations. (Mot. to Dismiss at 15 (citing FAC ¶¶ 50, 66, 82, 111).) We agree that this allegation is insufficient to plausibly allege the negligence element of a negligent misrepresentation claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Furthermore, despite purporting to be pled in the alternative to the fraud claims, each negligent misrepresentation claim incorporates by reference an allegation that Griffin and Dunken made the statements at issue knowing they were false. (FAC ¶¶ 42–44, 48, 58–60, 64, 74–76, 80, 103–05, 109.) We do not see, and Plaintiffs do not explain, how knowingly false statements can provide the basis for a claim that requires negligence or carelessness regarding the truth of the statements. *See Bd. of Educ. of City of Chi. v. A, C & S, Inc.*, 131 Ill. 2d 428, 452 (1989) (explaining that the defendant's mental state for a negligent misrepresentation claim is different from the mental state required for a fraudulent misrepresentation claim); *In re Flaugher*, 525 B.R. 67, 71 (Bankr. C.D. Ill. 2015) ("An act [that] is done 'knowingly' is not one that is done accidentally, involuntarily, or negligently."). We therefore dismiss Driscoll LLC's negligent misrepresentation claims.

### E.    Unjust Enrichment and Quantum Meruit

Driscoll LLC asserts an unjust enrichment claim against Dunken and Griffin and a quantum meruit claim against ACAP. (FAC Counts XI & XIV.) Defendants contend that these claims fail as a matter of law because the Agreement governs the relationship of the parties and

"all of Plaintiffs' requests for relief are premised on the terms of that Agreement."[8] (Mot. to Dismiss at 15–16.) Because unjust enrichment and quantum meruit are equitable remedies "based on a contract implied in law," a plaintiff cannot bring either claim against a defendant where an express contract governs the parties' relationship. *Gociman*, 41 F.4th at 886; *Keck Garrett & Assocs., Inc. v. Nextel Commc'ns, Inc.*, 517 F.3d 476, 487 (7th Cir. 2008); *R&M Trucking-Intermodal, Inc. v. Dr. Miracle's, Inc.*, No. 16-cv-8802, 2017 WL 3034673, at *11 (N.D. Ill. July 18, 2017).

Plaintiffs do not dispute that they allege that Dunken, Griffin, and ACAP are all parties to a contract with them. Plaintiffs instead contend that if we accept Defendants' argument that there is no contract with any defendant other than FCLG, then the unjust enrichment and quantum meruit claims are sufficiently pled. (Resp. at 12–13.)

As currently pled, Driscoll LLC's unjust enrichment and quantum meruit claims do not pass muster. Although a plaintiff can plead unjust enrichment or quantum meruit as an alternative theory to breach of contract, the plaintiff cannot "incorporate by reference allegations of the existence of a contract between the parties" in an unjust enrichment or quantum meruit count. *Gociman*, 41 F.4th at 886–87; *DeGeer v. Gillis*, 707 F. Supp. 2d 784, 798–99 (N.D. Ill. 2010). But that is what the FAC does. The unjust enrichment claim against Dunken and Griffin incorporates by reference every preceding allegation (FAC ¶ 85), which include the allegations that Defendants—i.e., every Defendant, including Dunken, Griffin, and ACAP—"entered into the relevant Agreement with Plaintiffs" and then "in all respects breached the Agreement." (*Id.* ¶¶ 16, 28.) The quantum meruit claim against ACAP also incorporates these allegations by

---

[8] We do not consider the "additional reasons" for dismissal that Defendants raise for the first time in their reply. (Reply at 14–15); *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) (a district court may "find that an argument raised for the first time in a reply brief is forfeited").

reference (*id.* ¶ 97), as well as other allegations that specifically allege that ACAP breached the Agreement. (*Id.* ¶¶ 88, 89.) These claims are dismissed. *See Gociman*, 41 F.4th at 887 (unjust enrichment count's incorporation by reference of allegations of the existence of a contract prevented the count from moving forward); *DeGeer*, 707 F. Supp. 2d at 798–99 (same for quantum meruit count).

## III. Leave to Amend

Because we are dismissing some of Plaintiffs' claims, we also consider whether to give Plaintiffs leave to file a Second Amended Complaint that repleads these claims. A district court must allow a plaintiff to amend its complaint "unless there is a good reason . . . for denying leave to amend." *Liebhart v. SPX Corp.*, 917 F.3d 952, 964 (7th Cir. 2019) (quotation marks omitted). Whether to grant a plaintiff leave to amend "is a matter purely within the sound discretion of the district court." *Brunt v. Serv. Emps. Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002).

We grant Plaintiffs leave to amend. This is the first time we have dismissed any of Plaintiffs' claims, and we are still in the early stages of the lawsuit. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015) ("[A]pplying the liberal standard for amending pleadings, especially in the early stages of a lawsuit, is the best way to ensure that cases will be decided justly and on their merits."). Furthermore, Defendants do not provide a good reason for dismissing Plaintiffs' claims without offering a chance to amend. That said, we are skeptical that Plaintiffs can allege facts showing that many of the dismissed claims should proceed in this case, so Plaintiffs will have one—and only one— opportunity to replead the dismissed claims. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) ("Generally, if a district court dismisses for failure to state a claim, the court should give the party one opportunity to try to cure the problem, even if the court is skeptical about the prospects for success.").

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 22) is granted in part and denied in part. All claims brought by Driscoll P.C. are dismissed. With respect to the claims brought by Driscoll LLC, we dismiss its breach of fiduciary duties claim against FCLG (Count II), its negligent misrepresentation claims against each Defendant (Counts IV, VII, X, and XVI), its unjust enrichment claim against Griffin and Dunken (Count XI), its breach-of-contract claim against ACAP (Count XII), its quantum meruit claim against ACAP (Count XIV), and its promissory fraud claim against all Defendants (Count XVII). Driscoll LLC's remaining claims may proceed. Plaintiffs may file a Second Amended Complaint that repleads any of the dismissed claims if they can do so in accordance with this Opinion and Federal Rule of Civil Procedure 11. If Plaintiffs file a Second Amended Complaint, they shall do so within 21 days of this Opinion. If Plaintiffs decide to proceed on the First Amended Complaint, as limited by this Opinion, they should notify the Court of that decision within 21 days of this Opinion. In either case, Defendants shall have 21 days thereafter to answer or otherwise respond to the operative complaint. It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: March 6, 2023