IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE DRISCOLL FIRM, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 22 CV 1536 |
| v. ) | |
| ) | Judge Marvin E. Aspen |
| FEDERAL CITY LAW GROUP, PLLC, ) | |
| BERT "TERRY" DUNKEN, GREG ) | |
| GRIFFIN, and ACAP, LLC, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

In this diversity suit, Plaintiff/Counter-Defendant, The Driscoll Firm LLC ("Driscoll"), moves to dismiss the counterclaim of Defendant/Counter-Plaintiff Federal City Law Group, PLLC ("Federal City") under Federal Rule of Civil Procedure 12(b)(6). (Motion to Dismiss Counterclaim ("Mot. Dismiss") (Dkt. No. 52).) For the following reasons, the motion is denied.

**FACTUAL BACKGROUND**

Driscoll and Federal City are both law firms. Driscoll brought this action claiming, among other things, that Federal City breached an attorney association agreement between the parties relating to the representation of mass-tort product-liability claimants. (First Amended Complaint ("1st Am. Compl.") (Dkt. No. 18).) Federal City filed a counterclaim in which it says that "[i]n actuality," it was Driscoll who breached the parties' contract. (Counterclaim ("Countercl.") (Dkt. No. 38) at 1-2.) The key provisions of that contract and Federal City's allegations are as follows.

On January 4, 2021, Driscoll and Federal City entered into a written Attorney Association Agreement (the "Agreement"). (*Id.* ¶ 7.) It provided that Federal City agreed to "source 200 Johnson & Johnson talcum powder cases" for Driscoll. (1st Am. Compl., Ex. 1, Agreement ¶ 1.) Each case Federal City sourced had to be supported by medical and pathological records showing that it met certain criteria set forth in the Agreement. (*Id.* ¶ 5.) These records had to be provided by March 1, 2021 for all cases subject to the Agreement. (*Id.* ¶ 14.) In return, Driscoll agreed to pay Federal City $3,000.00 for each sourced case that met the criteria, in the form of an upfront payment of $600,000.00 upon execution of the Agreement. (*Id.* ¶¶ 2, 4.) For cases that settled above a certain threshold, Driscoll agreed to pay Federal City an "additional sourcing cost" as well, on a sliding scale in proportion to the case's value. (*Id.* ¶ 14.) Federal City also "retain[ed]" a 20 percent interest in each case sourced under the Agreement, "such interest to be paid within 14 days after the final settlement" of each case, and it was to receive 20 percent of the attorneys' fees recovered in each settled case. (*Id.* ¶¶ 3, 14.)

The Agreement further provided that if Federal City failed to source 200 qualified clients, Driscoll would be entitled to a $3,000.00 "rebate" for each case that was not sourced as provided in the Agreement. (*Id.* ¶ 14.) The Agreement is silent on the timing for payment of this rebate. (Countercl. ¶ 9.) In addition, Federal City agreed to "repay" Driscoll $3,000.00 "as reimbursement for any of the 200 cases" that did not meet certain settlement criteria, payable "within 30 days" of Driscoll's having informed Federal City of "the settlement criteria determined and agreed by Johnson & Johnson." (Agreement ¶ 14.)

Prior to March 1, 2021, Federal City sourced "at least" 77 qualifying cases in accordance with the Agreement (at least 33 of which Driscoll "expressly acknowledged and agreed to have satisfied the required criteria") but was unable to source all 200 qualifying cases. (Countercl. ¶

2

10.) To account for the shortfall, Federal City paid Driscoll a total of $550,000.00 in rebates between March 1, 2021 and December 10, 2021. (*Id.* ¶ 11.) Federal City asserts that the total amount of rebates it paid Driscoll "exceeded amounts required to be paid under the terms of the Agreement based on the number of qualifying cases" it sourced. (*Id.* ¶ 12.) Driscoll nevertheless has claimed that the rebate payments were insufficient and has demanded an additional $125,000.00, which would result in a total of $675,000.00 in rebates, more than the $600,000.00 Driscoll paid Federal City under the Agreement. (*Id.* ¶ 13.) Driscoll has also demanded that Federal City agree to forfeit its contractual entitlement to a 20 percent interest and the "additional amounts due" based on the ultimate value of the sourced cases (together, its "continued interests"). (*Id.*) Federal City estimates that the value of its continued interests in the 77 qualifying cases is between $3,850,000.00 and $6,160,000.00. (*Id.*)

## PROCEDURAL BACKGROUND

In the First Amended Complaint (the operative complaint), Driscoll alleges that while it fully performed its obligations under the Agreement by paying Federal City $600,000.00 upon execution of the Agreement and "undertaking other obligations," Federal City breached the Agreement by failing to source 200 qualifying cases and failing to provide the required documentation for sourced cases, and the breach caused Driscoll to suffer damages, including legal fees and the time value of its investment. (1st Am. Compl. ¶¶ 27-28, 33-35.)[1]

---

[1] Driscoll also has claims for fraud (against all defendants) and breach of fiduciary duty (against defendants other than Federal City) that survived defendants' motion to dismiss. (Mem. Op. & Order of Mar. 6, 2023 (Dkt. No. 35) at 27; Driscoll's Status Report Concerning Prosecution of Claims (Dkt. No. 36) at 1 (stating that Driscoll elects to stand on the remaining claims in the First Amended Complaint in lieu of filing a Second Amended Complaint).)

In Count I of its counterclaim, Federal City seeks a declaratory judgment, as set forth in our discussion below. (Countercl. ¶¶ 15-20.) In Count II, Federal City alleges that Driscoll breached the parties' Agreement by (1) "demanding rebate payments in the amount of $675,000" and (2) failing to pay Federal City its continued interests "that have become due and owing to date" for the qualifying cases it sourced. (*Id.* ¶¶ 21-26.)

Driscoll moves to dismiss the counterclaim.

## ANALYSIS

**A.**     **Legal Standards**

The Rule 12(b)(6) stage tests the sufficiency of a claim, not its merits. *Gociman v. Loyola Univ. of Chi.,* 41 F.4th 873, 885 (7th Cir. 2022). We construe the counterclaim in the light most favorable to Federal City, accept as true all well-pleaded facts, and draw all reasonable inferences in Federal City's favor. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). To withstand a Rule 12(b)(6) motion, a claim must be facially plausible and provide fair notice to the defendant of its basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The Agreement provides, and the parties appear to agree, that Illinois law governs. (Agreement ¶ 16; Mot. Dismiss (citing Illinois law throughout); Federal City Law Group, PLLC's Response in Opposition to the Driscoll Firm, LLC's Motion to Dismiss Counterclaims (Dkt. No. 66) (citing Illinois law throughout).)

B.    **Count I (Declaratory Judgment)**

In Count I, Federal City seeks a declaration that "(i) the Agreement remains in full force and effect, (ii) the Rebate Payments made by [Federal City] satisfy and/or are in excess of the amount of rebate payments due under the terms of the Agreement, and (iii) [Federal City] is contractually entitled to receive, and [Driscoll] is contractually obligated to complete, payment of all Continued [Federal City] Interests for the qualifying Cases sourced under the terms of the Agreement." (Countercl. ¶ 16.)

Driscoll contends that Federal City's first request for declaratory relief should be dismissed because "[t]here is no controversy with respect to whether the Agreement remains in full force and effect" in that Driscoll alleges in its complaint that the "'Agreement constitutes a valid and enforceable contract.'" (Mot. Dismiss at 4-5 (quoting 1st Am. Compl. ¶ 32).) Yet, as Federal City points out, Driscoll contends in the very same motion that the contractual "continued interests" asserted by Federal City in the cases it sourced are based on referral and fee-sharing provisions that are unenforceable under Illinois law because they do not encompass the required client consent. (*Id.* at 6-8, 9-10.) Therefore, there is a live controversy regarding the enforceability of those provisions of the Agreement. In its reply brief, Driscoll attempts to reconcile its arguments by asserting that "[a]lthough there is no controversy between the parties that the Agreement is enforceable by and between the parties, that does not mean that the purported arrangement to share attorney's fees is enforceable as sought in the Counterclaim." (The Driscoll Firm, LLC's Reply in Support of Motion to Dismiss Counterclaim (Dkt. No. 73) at 2.) This is a distinction without a difference; Driscoll is essentially arguing that at a portion of the Agreement, one of the bases for Federal City's claim, is unenforceable.

Next, Driscoll asserts that Federal City's request for a declaration that the rebate payments it made to Driscoll satisfied or exceeded the amount due under the Agreement is improper because it pertains to "past conduct." (Mot. Dismiss at 5.) But Driscoll fails to develop this argument with any analysis, merely citing case law for the proposition that declaratory relief is a remedy that can be used to declare the rights of the parties involved before an actual claim accrues or an irrevocable change in the parties' relationship occurs. (*Id.* (citing *Gagne v. Vill. of La Grange*, 36 Ill. App. 3d 864, 866 (1st Dist. 1976), and *Scott v. McCoy*, No. 10 C 3871, 2011 U.S. Dist. LEXIS 128858, at *2-3 (N.D. Ill. Nov. 7, 2011).) These decisions do not stand for the inverse proposition that declaratory relief can never be used for the issues involved in Federal City's counterclaim. In any event, given the complex structure of "rebates," "reimbursements," "additional sourcing costs," and retained "interests" the parties created in their Agreement, it is not entirely clear that the declaratory relief Federal City seeks wholly relates to "past conduct." *See, e.g.*, *Palos Cmty. Hosp. v. Diversified Clinical Servs., Inc.*, No. 15 C 10634, 2016 WL 2984342, at *4 (N.D. Ill. May 24, 2016) (explaining that a declaratory judgment was a possible form of adjudication because, by "asking the Court to establish the parties' legal rights and obligations moving forward to determine how the parties should wrap up their relationship," plaintiff was "doing more than just seeking guidance on the propriety of past conduct").

As discussed above, Driscoll next contends that Federal City's request for a declaration that it is contractually entitled to be paid for its continued interests for the qualifying cases it sourced is against public policy and unenforceable as a matter of law. (Mot. Dismiss at 6-8.) Driscoll cites Rule 1.5 of the Illinois Supreme Court Rules of Professional Conduct, which states as follows:

6

> A division of a fee between lawyers who are not in the same firm may be made only if:
> (1) the division is in proportion to the services performed by each lawyer, or if the primary service performed by one lawyer is the referral of the client to another lawyer and each lawyer assumes joint financial responsibility for the representation;
> (2) the client agrees to the arrangement, including the share each lawyer will receive, and the agreement is confirmed in writing; and
> (3) the total fee is reasonable.

Ill. S. Ct. R. Prof'l Conduct 1.5(f). Driscoll also cites case law for the principle that fee-sharing agreements between attorneys are enforceable only where the requirements of Rule 1.5 are met. (Mot. Dismiss at 7-8 (citing, *inter alia*, *Baer v. First Options of Chi., Inc.*, 72 F.3d 1294, 1304 (7th Cir. 1995) ("When attorneys fail to inform their clients of fee-sharing arrangements and do not commit such arrangements to writing, the arrangements have not been enforced by Illinois courts.").) In Driscoll's view, Federal City's third request for declaratory relief should be dismissed because Federal City "does not allege compliance with Rule 1.5" or "that any clients agreed to a fee share" between the parties. (*Id.* at 7.)

Driscoll misses the mark by failing to cite authority supporting its argument that compliance with Rule 1.5 is a matter of pleading, i.e., that Federal City is required to *plead* facts that plausibly suggest compliance with the rule. Indeed, under Illinois law, contravention of public policy, also known as illegality, is an affirmative defense to a breach of contract claim. *See, e.g.*, *CFIT Holding Corp. v. Twin City Fire Ins. Co.*, No. 20 C 3453, 2020 WL 6273489, at *2 (N.D. Ill. Oct. 26, 2020) (citing *Phoenix Ins. Co. v. Rosen*, 949 N.E.2d 639, 645 (Ill. 2011)). Affirmative defenses do not justify dismissal under Rule 12(b)(6), and a party need not try to plead around them. *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003).

Driscoll's motion to dismiss is denied as to Count I of the counterclaim.

7

C.     **Count II (Breach of Contract)**

In Count II, Federal City alleges that Driscoll breached the Agreement by (1) demanding $675,000.00 in rebate payments, an amount that exceeds what Federal City says it owes; and (2) failing to pay Federal City for its continued interests in the qualifying cases it sourced under the Agreement. (Countercl. ¶¶ 24-25.)

Driscoll first contends that simply making a purportedly excessive demand is not a breach of contract, citing a single decision, *B & C Electric, Inc. v. Pullman Bank & Trust Co.*, 96 Ill. App. 3d 321, 329 (1st Dist. 1981). This argument has some appeal but is unpersuasive at this stage of the proceedings, especially considering that *B & C Electric* is distinguishable from the instant case. There, the court concluded that despite the unjustified nature of the plaintiff's demand for payment of the cost of certain work, the demand was not a breach of the parties' contract because the plaintiff had "performed in accordance with the contract in a satisfactory and timely manner for over a year following the discovery of the disputed matter." *Id.* at 329-30. Here, in contrast, Federal City alleges that in addition to the allegedly unjustified demand, Driscoll has failed to perform in accordance with the Agreement by paying Federal City what it is owed.

As to Federal City's second basis for its breach of contract claim—the failure to pay Federal City for its continued interests in the sourced cases—Driscoll reiterates its contention that absent client agreement, the fee-sharing provisions of the Agreement violate public policy and are thus unenforceable. As explained above, illegality is an affirmative defense that Federal City need not have anticipated in its counterclaim (by pleading, for instance, that the Agreement complies with Rule 1.5 or is "lawful," as Driscoll incorrectly contends it must, (Mot. Dismiss at 9-10)). Driscoll also makes a perfunctory argument that Federal City's damages "appear to be speculative." (*Id.* at 9.) Driscoll does not explain in what sense the alleged damages are

8

"speculative," and we disagree. Federal City has attempted to estimate the value of its continued interests, (Countercl. ¶¶ 13, 20), and disputes about the amount of damages are not a basis for dismissal, *Westlake Fin. Grp. v. CDH-Delnor Health Sys.*, 2015 IL App (2d) 140589, ¶ 53.

## CONCLUSION

For the reasons stated above, the motion of The Driscoll Firm, LLC to dismiss the counterclaim of Federal City Law Group, PLLC [52] is denied. It is so ordered.

_____
**Marvin E. Aspen
United States District Judge**

Dated: January 23, 2024